Billy Nathan NORTHERN, Jr. *v.*
STATE of Arkansas

CR 74-134
518 S.W. 2d 482

Opinion delivered February 3, 1975

*Rubens & Rubens,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Sam I. Bratton Jr.,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Billy Nathan Northern, Jr., was charged by felony information with the crime of robbery with a firearm. On trial, after the jury had been instructed on the various degrees of the crime, it returned a verdict of guilty of the misdemeanor crime of petit larceny and assessed Northern's punishment at one year in the county jail. From the judgment entered in accordance with the verdict, appellant brings this appeal. For reversal, four points are asserted, *viz.,*

"I.

THE COURT ERRED IN ADMITTING APPELLANT'S STATEMENT WHEN THE STATE FAILED TO SATISFACTORILY EXPLAIN THE ABSENCE OF RAYMOND GAIA.

II.

THE COURT ERRED IN ALLOWING THE PROSECUTING ATTORNEY TO QUESTION DEFENDANT ABOUT THE VARIOUS CRIMES FOR WHICH HE WAS CHARGED.

III.

THE COURT ERRED IN NOT ALLOWING DEFENDANT'S ATTORNEY TO VOIR DIRE THE JURY ON THE SECOND DAY OF THE TRIAL AFTER IT WAS LEARNED THAT LOCAL PAPERS HAD PRINTED ARTICLES WHICH WERE READ BY SOME OF THE JURORS WHICH STATED THAT DEFENDANT WAS CHARGED WITH FOUR FELONIES.

IV.

IN THE EVENT THAT THE LOWER COURT'S JUDGMENT IS AFFIRMED, APPELLANT SHOULD BE GIVEN CREDIT FOR THE TIME HE REMAINED IN JAIL AWAITING TRIAL."

We proceed to discuss these points in the order listed.

## I.

Appellant specifically objected to the introduction of his confession wherein the robbery was admitted, but the objection was overruled. Appellant, a diabetic, contended he was not involved and that he only confessed after he was denied his insulin for a great period of time. According to appellant, after he was arrested by West Memphis police officers, he was taken to the police headquarters in West Memphis and questioned by Officers R. G. Martin and Raymond Gaia. During the in-chambers hearing on the voluntariness of the confession, Northern stated, *inter alia,* that he was denied the use of a telephone to call a lawyer, missed breakfast because of being fingerprinted, and was thereafter questioned relative to the robbery. He said that he asked Martin to obtain his insulin for him because he was getting sick, and needed something to eat, but the officer replied that he (appellant) had to "go to the lineup first". He was then taken to Marion to the county jail for the lineup, after which he asked Detective Captain Gaia if he could have his insulin, but was advised that he could not until the investigation was over. Appellant was then taken back to the police station and the interrogation relative to the robbery was resumed. He said that he reached for a telephone to call a lawyer and also to call his father to obtain his insulin, but Gaia "slapped my hand down." According to his testimony, he was taken back to his cell, was getting very sick, "puking", and shaking; Gaia called him back and took him to his office; Gaia was the only person present at that time. Northern was again questioned, told that in order to get his insulin, obtain a lower bond, and make it easier on himself, he had best cooperate. He said he vomited in the bathroom, was sick at his stomach, dizzy, and completely exhausted. Appellant stated that he decided the only way he would get out was to write a statement as requested.

Northern said that he wrote on the paper as dictated by Officer Gaia, but that what he wrote was not true.

Donald Glover Sharp, who was being held in the jail at

Marion on a charge of possession of marijuana and no driver's license, testified that he was in the lineup with Northern and heard the latter ask Gaia if he could make a phone call because he needed his "shot" and that Gaia replied, "After the investigation."

Sergeant Martin testified that appellant was questioned by himself and Captain Gaia at the same time and that, to his knowledge, Gaia never talked to Northern by himself. He stated that Northern did not try to use the phone and was not mistreated in any manner, nor promised any reward or leniency in return for a confession. The officer said that he learned Northern was a diabetic when the latter commenced writing his statement and at that time the prisoner stated, "Excuse me. I am a diabetic, and I am nervous." Martin said that Gaia asked appellant if he wanted to call somebody and received the reply, "No, I can wait until I get to Marion." The court held the confession to be voluntary and accordingly admissible. Officer Martin then reiterated this testimony before the jury, reciting that both he and Captain Gaia were present the entire time, and that Northern was never present with just Gaia. Gaia did not testify.

Counsel for appellant contended, and contends here, that in order to establish the voluntariness of the confession, it was essential for the state to either place Gaia on the witness stand, or give a satisfactory reason why he was not testifying. The court asked counsel if he (defense counsel) had subpoenaed Gaia, stating that defense counsel had the same right as the state, and if he wanted the testimony, he could have taken the deposition. Counsel contended that it was up to the state to produce the witness, and not the defendant. Appellant was correct. In *Smith* v. *State*, 254 Ark. 538, 494 S.W. 2d 489, we pointed out that under our case law, there is a presumption that an in-custody confession is involuntary and the burden is on the state to show the statement to have been voluntary, i.e., freely and understandably made without hope of reward or fear of punishment. See also *Mitchell* v. *Bishop, Supt.*, 248 Ark. 427, 452 S.W. 2d 340. In *Smith* v. *State*, 256 Ark. 67, 505 S.W. 2d 504 (1974), we stated that whenever an accused offers testimony that his confession was induced by violence, threats, coercion or offers of reward,

the burden is on the state to produce all material witnesses who were connected with the controverted confession or give adequate explanation for their absence. Accordingly, in the case before us, under the testimony of Northern, it was necessary that the state offer Gaia as a witness or give an adequate explanation for his not being present. We do not think this was done. Martin testified that Captain Gaia was no longer with the West Memphis Police Department, having resigned two or three months earlier. He said that Gaia was still in town two weeks after he resigned, and that he understood that Gaia was in Crystal Springs, Florida, but did not know exactly where Gaia could be located. The state's attorney, at the time of defense counsel's objection, stated that the state could bring witnesses to testify that efforts had been made to locate Gaia if the court deemed it necessary; further, that the state had an affidavit from Gaia's wife to the effect that she didn't know where he could be found, and had no means of locating him. From other remarks between counsel at the time, it is apparent that appellant's counsel had already indicated to the state that Gaia's testimony would be important.

While counsel for the state said that he could bring witnesses into court to testify to efforts made to locate Gaia, this was not done; nor was the affidavit from the wife filed with the court. In addition, the record reflects that no subpoena was issued for Gaia, although in another criminal case against another defendant, set for the next day, a subpoena had been issued for Gaia. Accordingly, as far as Gaia's whereabouts are concerned, the record only reflects that he might be located in Crystal Springs, Florida, and there is nothing in this record (except the statements of the state's attorneys) to indicate whether the state had made an effort to locate this witness. Of course, the fact that Gaia had been subpoenaed in another case for the very next day but was not subpoenaed in the Northern case indicates that the state never had any intention of using Gaia in the case presently before us.

Under the holdings in the two *Smith* cases, the Crittenden County Circuit Court committed error, and this error will necessitate a reversal.

## II.

The questions asked by the prosecution, to which the appellant objected, did not refer to any charge against Northern; rather, appellant was simply asked if he had robbed certain persons on particular dates. The answer in each instance was in the negative. No error was committed. See *Moore* v. *State*, 256 Ark. (April 8, 1974), 507 S.W. 2d 711, and cases cited therein.

## III.

This point is not likely to arise on a re-trial and accordingly there is no need for discussion.

## IV.

Since appellant's conviction is being reversed, this point becomes moot and requires no discussion.

Because of the error set out under Point I, the judgment is reversed and the cause remanded.