Andrew LOGAN, Jr. *v.* STATE of Arkansas

CR 78-137                                   576 S.W. 2d 203

Opinion delivered January 29, 1979
(In Banc)

*Frank C. Elcan, II*, Deputy Public Defender, for appellant.

*Bill Clinton*, Atty. Gen., by: *Jesse L. Kearney*, Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. Logan was charged with aggravated robbery, was found guilty, and was sentenced to 25 years in prison. Three points for reversal are argued, the first of which includes subordinate contentions.

On the day of the robbery Logan and the victim, Doss Tatum, Jr., struck up an acquaintance in West Memphis, in Crittenden County, during the afternoon. Logan gave his name as Jesse Gates. The two spent several hours together, riding around in Tatum's car and drinking. At about 7:00 p.m. Logan, who was driving, stopped the car on a lonely road off a highway, drew a pistol, and robbed Tatum of $68. Logan drove away, leaving Tatum on the road. Tatum made his way to a nearby store and called the sheriff's office to report the crime. Over a period of several hours a Crittenden County deputy sheriff, J.M. Davis, investigated the case and eventually discovered that Tatum's companion had actually been the appellant, Logan.

Davis learned that Logan was at a gambling and dancing "joint" at Hicks Station, a community in adjoining St. Francis County. Davis called the sheriff's office of that county and, accompanied by Sam Hughes, a St. Francis County deputy sheriff, and by another Crittenden County officer, went to Hicks Station and arrested Logan at about 3:00 a.m. Davis took a pistol from Logan and transported him back to Crittenden County. There officers found $52.52 in Logan's pocket. A day later, under interrogation, Logan confessed to the crime and consented to a search of his apartment, where a watch believed to have been taken in the robbery was seized.

It is first argued that the pistol, the money, the confession, and the watch were the fruits of an illegal arrest and should not have been admitted in evidence. It is contended

that Officer Davis did not have authority to arrest Logan in St. Francis County, because (1) the officer did not have a warrant, which would authorize him to make an arrest in any county under Ark. Stat. Ann. § 43-411 (Repl. 1977) and under Rule 4.2 of the Rules of Criminal Procedure (1976), and (2) the officer was not in fresh pursuit of Logan. Ark. Stat. Ann. § 43-501.

We need not discuss these contentions, because it is a fair inference from Davis's testimony that Sam Hughes, the St. Francis County deputy, participated in the arrest. We quote from Davis's testimony:

Q. Do you have any commission entitling you to make an arrest . . . in St. Francis County?

A. We had a deputy sheriff out of St. Francis County with us.

Q. You made the arrest?

A. We went with him and made the arrest, yes, sir.

* * * * *

Q. You are the one who placed him under arrest?

A. We talked to him there. Deputy Sheriff Sam Hughes and I put him under arrest right there.

* * * * *

Q. Officer Davis, I think you testified the deputy's name that was with you and participated in the arrest was Sam Hughes?

A. St. Francis County Deputy Sam Hughes, yes, sir.

Q. And he is a deputy sheriff with St. Francis County—

A. Sheriff's office, yes, sir.

An arrest, to be effective, does not require formal words of arrest. *Reed* v. *United States,* 401 F. 2d 756 (8th Cir. 1968). The restraint is equally as important as the words. In the language of our statute: "An arrest is made by placing of the defendant in restraint, or by his submitting to the custody of the person making the arrest." § 43-412.

An analogous situation involving a joint arrest by three officers was considered in *Parrish* v. *Herron,* 225 S.W. 2d 391 (Mo. App. 1949). There the plaintiff sued a sheriff, his deputy, and a city marshal for false arrest and imprisonment. The deputy argued that he was not liable, because he did not participate in making the arrest. He was present, however, and later guarded the arrested person while the arresting officer made a search. In holding the deputy liable the court said: "It is well established that all persons who directly procure, aid, abet, or assist in an unlawful imprisonment are liable as principals." Even though it was Officer Davis who actually told Logan that he was under arrest, we think it clear that Officer Hughes was also present in his capacity as a deputy sheriff and participated in making the arrest. If that is not true, the record does not suggest any reason for Officer Davis to request the local officer to accompany him to Hicks Station.

Since the arrest was legal without regard to fresh pursuit, there was no requirement that Logan be taken before a St. Francis County magistrate under the Intrastate Fresh Pursuit Act, § 43-502. Criminal Procedure Rule 8.1 merely requires that an arrested person be taken before a judicial officer without unnecessary delay. The arrest occurred at about 3:00 a.m. on Sunday, and Logan was taken before the municipal court on Monday morning. His interrogation and the consent to the search of his apartment did not occur until Monday afternoon. We find no violation of his rights in this respect. Nor do we find any basis for overturning the trial judge's finding that the confession was voluntary.

It is argued that the $52.52 taken from Logan after his arrest was not admissible, because the victim did not testify about the denominations of the bills or other particular characteristics of the money. The facts stated in *Patrick* v.

*State,* 255 Ark. 10, 498 S.W. 2d 337 (1973), are so incomplete that we do not regard that opinion as holding that such identifying characteristics must be shown before money can be admitted in evidence. Tatum testified that $68 was taken from him, and Logan was found about eight hours later with $52.52 in his pocket. The evidence was relevant under our statutory definition: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Uniform Rules of Evidence, Rule 401, Ark. Stat. Ann. § 28-1001 (Repl. 1962). That Logan had almost the amount of money that was taken was a relevant fact. Moreover, there could have been no prejudice even if the evidence had been inadmissible, for Logan admitted in his confession that he took $52 from the victim.

Again, it is argued that the watch found at Logan's apartment should have been excluded, because the officer making the search did not give Logan a receipt describing the watch. Rules of Criminal Procedure, Rule 11.4. The Commentary to Article IV of the rules (following Rule 10.1) explains the purpose of the receipt: "Such a receipt informs the person that the seizure is under color of law and may be of evidentiary value in a subsequent proceeding under Rule 15 for the return of seized things." Neither purpose for the receipt is pertinent here. Evidence seized illegally is inadmissible, because otherwise the constitutional prohibition of unreasonable searches and seizures would not be a deterrent to law enforcement officers. But the constitution does not require the giving of the receipt, and we consider the rule to be merely directory.

Finally, Officer Davis testified in response to a question that when Logan was transported back to Crittenden County he made no objection to being brought back. Counsel moved for a mistrial, on the ground that the testimony violated Logan's constitutional right to remain silent. If so, any possible prejudice could readily have been eliminated by an admonition to the jury, but that remedy was not requested. The motion for a mistrial was therefore properly denied. *Russey* v. *State,* 257 Ark. 570, 519 S.W. 2d 751 (1975).

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I disagree with the majority opinion in this case for several reasons. Had the trial court proceeded in accordance with this dissent, the results of the trial probably would have been about the same. In my opinion, the errors committed do not fit into the "harmless error" category; neither do they reach up to the constitutional denial level. Nevertheless, they are errors which the court sanctions in this case and are likely to be enlarged in the future. The time to correct such errors, in my opinion, is now.

The criminal act occurred in Crittenden County on June 12, 1976, about 7:00 p.m. Within a couple of hours, the Crittenden County sheriff commenced his investigation. During the next few hours, the Crittenden County sheriff developed enough evidence to form the belief that appellant was probably the man he wanted. His suspicions were strong enough that he traveled to St. Francis County looking for appellant. About 3:00 a.m. the following day, June 13, 1976, Deputy Davis of Crittenden County went to St. Francis County and met Deputy Sam Hughes and together they went to a place called Hicks Station, accompanied by an officer from Earle, Arkansas, where appellant was located. Deputy Davis had not obtained a warrant for the arrest of appellant although eight hours had elapsed since the robbery had taken place. There is absolutely no evidence appellant had reason to believe he was a suspect in this crime nor was he attempting to flee. The sheriff and his deputies, like other county officers, have jurisdiction within their county unless it is extended in some manner, otherwise there would be no need for each county to elect a sheriff.

If there was an exception in this case to allow a sheriff of one county to make an arrest in another county, it must be one of fresh pursuit, a citizen's arrest, or other statutory grounds. Ark. Stat. Ann. § 43-404 (Repl. 1977) allows a private person to arrest if he had reasonable grounds for believing the person arrested has committed a felony. "Fresh pur-

suit" is defined in Ark. Stat. Ann. § 43-503 (Repl. 1977); ". . . the pursuit of a person who has committed a felony or is reasonably suspected of having committed a felony in this state — Fresh pursuit as used herein shall not necessarily imply instant pursuit, but pursuit without unreasonable delay." I have been unable to locate any case wherein the meaning of fresh pursuit has been construed. Rule 4.1, on its face, would appear to allow an officer to make an arrest, such as this one, without regard to county lines. However, we must look at it overall and in light of prior determinations of the extent of the sheriff's authority.

In the present case, the robbery occurred about 7:00 p.m. and by 9:00 p.m., or soon thereafter, the Crittenden County sheriff had determined appellant was a suspect and commenced searching for him. Upon learning the suspect was probably at Hicks Station in St. Francis County, the sheriff's deputy proceeded, without a warrant, to St. Francis County where he met a St. Francis County deputy and then located appellant and arrested him. Although the St. Francis deputy and an officer from Earle were present, the Crittenden County deputy made the arrest. In the case of *Blevins* v. *State,* 31 Ark. 53 (1876), the Sheriff of Pope County made an arrest in Conway County and this Court stated:

> "The act of the Sheriff of Pope County therefore, in arresting said Moore in Conway County, was of no more force and validity than if it had been that of a private citizen and the bond taken by him upon the arrest was a mullity."

If the Crittenden County deputy had obtained a warrant, or even given the St. Francis County deputy reasonable cause to believe the appellant had committed a felony and allowed the St. Francis deputy to make the arrest, there would be no doubt in my mind that the arrest was legal. However, none of these were done. This leaves, in my opinion, only the fresh pursuit theory. The United States Supreme Court has stated that the Sheriff of Morris County, Texas, had no authority to arrest a person in Titus County, Texas. *Ward* v. *Texas,* 316 U.S. 547, 62 S. Ct. 1139 (1942).

Here the arresting officer had known for four or five hours who he was going to arrest if he could find him. He was never in pursuit but only looking or trying to locate the suspect. He found him in the adjoining county and arrested him and transported him out of the county without a hearing as required by Ark. Stat. Ann. § 43-502 (Repl. 1977). This statute is a part of the Fresh Pursuit Act (1941 Ark. Acts, No. 19).

If the arrest was illegal, and I think it was, then the evidence should have been suppressed. There was absolutely nothing to connect the $52 to the robbery. I am sure a lot of people in St. Francis County have as much as $52 on them at various times and certainly it is not evidence they have committed a crime. If the victim had even stated the money found was in the same denominations as that found on the appellant, it might have shed some light on the subject. Even with a valid arrest, the money should not have been admitted into evidence. There has probably been no injustice done in this case, but appellant's rights have been violated. In the next case, these same illegal acts might cause a manifest injustice to occur. I am afraid the majority has fostered the incursion of roving bands of strangers who might be counterfeited by bands of marauders.

There is still plenty of time to do this whole case over and omit the errors committed in this case.

I would reverse and remand for a new trial.