Robert BUSHONG *v.* STATE of Arkansas

CR 79-161                                           589 S.W. 2d 559

Opinion delivered November 13, 1979
(In Banc)

114

*McDaniel & Gott,* P.A., by: *Bobby McDaniel* and *Phillip Wells,* for appellant.

*Steve Clark,* Atty. Gen., by: *Robert J. DeGostin, Jr.,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. Robert Bushong, the appellant, was convicted of possession of marijuana with the intent to deliver it and sentenced to five years imprisonment and fined $5,000.00.

Bushong was charged in Fulton County, Arkansas but tried in Izard County, the court having granted a motion for change of venue.

Bushong alleges four errors: First, there is a three-fold attack on his prosecution under Arkansas' Controlled Substances Act. Bushong alleges the Act amounts to an invalid delegation of legislative authority; that the Commissioner of Narcotic and Toxic Substances has failed to comply with the Controlled Substances Act and the Administrative Procedure Act; and that the Controlled Substances Act is unconstitutional because it is arbitrary, capricious and unreasonable. Second, the State failed to call a material witness who was present during the appellant's interrogation. Third, the court failed to suppress Bushong's statements which, allegedly, were induced by coercion, violence and threats. Fourth, the court erred in admitting an oral statement made by the appellant to Trooper Bob Reynolds.

We find no merit to any of these arguments and affirm the judgment of the trial court.

The appellant put on extensive proof that the Commissioner of Narcotic and Toxic Substances had failed "to

revise and republish'' the schedules in the Controlled Substances Act as required by Ark. Stat. Ann. § 82-2614.3 (Repl. 1976).

Also, the appellant put on evidence that the Commissioner had not complied with the Administrative Procedure Act. This argument relates to a requirement that certain information be filed with the Secretary of State and the clerks of the various circuit courts throughout the state. See Ark. Stat. Ann. § 5-703(d) (Repl. 1976).

Finally, the argument is made that marijuana does not belong in the classification in which it was placed, is not a harmful substance that should be in the Controlled Substances Act, and, therefore, is unconstitutionally controlled.

Because the appellant was prosecuted under a part of the Controlled Substances Act which has not been changed since it was enacted by the General Assembly, the appellant is in no position to argue that he was aggrieved by any failure on the Commissioner's behalf to strictly follow the Administrative Procedure Act. That failure to act would be poor administration, not a defense in this case. For the same reason, the appellant has no standing to attack the Commissioner's authority as an unlawful delegation of legislative authority. *U.S.* v. *Westlake,* 480 F. 2d 1225 (5th Cir. 1973). Neither do we believe that the Commissioner's failure to revise and republish the schedules of controlled substances, at least where no allegation of the lack of actual notice was made, can be used as a defense to a criminal prosecution under a part of the Act as passed by the General Assembly. Compare *Central Arkansas Auction Sale, Inc.* v. *Bergland,* 570 F. 2d 724 (8th Cir. 1978).

The fact that the appellant offered some evidence that marijuana does not belong in Schedule 6 does not mean the General Assembly was wrong in its classification of marijuana. Such legislation is presumed to be constitutional, *State* v. *Baker,* 56 Haw. 271, 535 P. 2d 1394 (1975), and will be upheld if supported by any rational basis. *Pridgeon* v. *State,* 266 Ark. 651, S.W. 2d 225 (1979).

While the appellant offered testimony that marijuana was not as harmful as alcohol or tobacco, we cannot say that the evidence presented by the appellant is so overwhelming and uncontradicted as to convince us that the legislative act in question is arbitrary, capricious and unreasonable and, therefore, violates the due process clause and the equal protection clause of the United States Constitution. See *People* v. *Star,* 400 P. 2d 923 (Colo. 1965).

A pre-trial hearing was held, as required by *Jackson* v. *Denno,* 378 U.S. 368 (1964), to determine if Bushong's statements were voluntary. He admitted to the police officers it was his marijuana. Bushong testified that he was threatened, coerced and intimidated by police officers for several hours before he finally made a statement to two Arkansas State Policemen in Salem about 4:30 p.m. on the date he was arrested. Such an in-custody confession is presumed to be involuntary and the burden is on the State to show that the statement was voluntarily made. *Smith* v. *State,* 254 Ark. 538, 494 S.W. 2d 489 (1973). We make an independent determination of voluntariness of a confession based upon the totality of the circumstances. However, we do not overturn the findings of the trial court unless they are clearly against the preponderance of the evidence. *Degler* v. *State,* 257 Ark. 388, 517 S.W. 2d 515 (1974). Bushong's statements were found to be voluntary by the trial court.

In *Smith* v. *State, supra,* we adopted the rule that whenever an accused offers testimony that his confession was induced by violence, threats, coercion or offers of reward, then the State has a burden to produce all material witnesses who were connected with the controverted confession or give adequate explanation of their absence.

Seven police officers were called to testify at the *Denno* hearing regarding the voluntariness of Bushong's statements. The State did not call a possible witness, Doug Rogers, who was a constable. The appellant objected to the State's failure to call Rogers as a material witness and the State offered no explanation of his absence. The question presented to us is, was Doug Rogers a material witness connected with the confession; should he have been called

by the State or his absence explained?

In *Smith* v. *State, supra,* an Arkansas State Policeman who was accused by the defendant of coercing him and promising him leniency was not called as a witness. Neither was the stenographer called who took down the defendant's statement and who was present during his interrogation. We held these persons were material witnesses. In the case of *Smith* v. *State,* 256 Ark. 67, 505 S.W. 2d 504 (1974), the State did not call one of two police officers who interrogated the defendant. There was evidence the confession was induced by violence, threats and coercion. Both police officers were accused of physically abusing the defendant. We held the absent police officer was a material witness. That officer signed the statement as a witness and was present when the defendant made his statement.

In *Northern* v. *State,* 257 Ark. 549, 518 S.W. 2d 482 (1975), one of two police officers was not called by the State. An allegation was made by the defendant that he was physically abused by the absent officer. The State's explanation of the officer's absence was not satisfactory and we reversed the judgment. In *Gammel & Spann* v. *State,* 259 Ark. 96, 531 S.W. 2d 474 (1976), the State failed to call a witness who was in jail with the defendant. The argument was made that the cellmate, as well as police officers or jailers who placed the witness in the cell, could shed some light on the defendant's argument of an involuntary statement. We refused to extend the *Smith* v. *State,* 254 Ark. 538, 494 S.W. 2d 489 (1973) decision beyond its specific language.

It is no excuse that a defendant fails to call the material witnesses. That burden is clearly upon the state. *Northern* v. *State, supra.*

The Illinois Supreme Court has had extensive experience with this rule. In the case of *People* v. *Sims,* 211 Ill. 2d 425, 173 N.E. 2d 494 (1961), cert. den. 369 U.S. 861 (1962), that Court reviewed its previous decisions and discussed the application of the rule.

Illinois had substantially the same rule that we adopted

in the *Smith* case. However, through the years they used different language in describing the rule. For example, witnesses that were required to be called by the state were described as "All the Police Department men engaged or present at the sweating," "all the persons who had control over the defendant and are allegedly involved in the use of coercion," and "every police officer and every other person connected with taking the confession."

The Illinois Court in *Sims* reviewed its rule and discussed in detail its decisions. In one case where a defendant was grilled constantly over an extended period of time, the State called only one police officer whose testimony covered only one-tenth of the period of time involved, and he did not specifically deny the alleged facts of the defendant. *People* v. *Holick,* 337 Ill. 333, 169 N.E. 169 (1929). In another case, a State's Attorney to whom the defendant complained concerning the tactics of the police was not called. *People* v. *Sloss,* 412 Ill. 61, 104 N.E. 2d 807 (1952). These absent witnesses were determined to be material by the Illinois Court.

On the other hand, a State's Attorney who questioned the accused and took his confession was found not to be a material witness. The accused in that case said he was promised leniency. However, those promises were not made by the State's Attorney but by a sheriff and his deputy at a time when the State's Attorney was not present. There was no claim that the State's Attorney made any improper inducement or that the State's Attorney was present when it occurred. The State's Attorney was not declared a material witness. *People* v. *Scott,* 401 Ill. 80, 81 N.E. 2d 426 (1948).

In another case, several witnesses who had been present at various stages of the interrogation process were not found to be material witnesses. The court concluded, "every person who could be considered a material witness . . . was produced . . ." *People* v. *Jennings,* 11 Ill. 2d 610, 144 N.E. 2d 612 (1957). It was found unnecessary to call some police officers who were present in the police station at the time of interrogation, but who did not participate in the questioning. *People* v. *Gavurnik,* 2 Ill. 2d 190, 117 N.E. 2d 782 (1954).

The Illinois Court concluded that its decisions were consistent and that the principle involved was the same. It said:

> The principle that emerges clearly from all these cases is that the persons who must be called as witnesses or whose absence must be explained are those persons whose testimony would be material on the issue of the voluntary nature of the confession. *People* v. *Sims,* 21 Ill. 2d 425, 432; 173 N.E. 2d 494 (1961).

There is no doubt each case can differ in some respect and it becomes a question of applying the rule to facts in each case.

Bushong does not claim that any coercion or improper inducement occurred when he actually made the statement about 4:30 p.m. on the day he was arrested. That statement was taken by two Arkansas State Policemen, Officers Talley and Turner. It was not disputed that they properly advised Bushong of his rights and that he admitted to them that the marijuana was his. Bushong claims that the coercion occurred after he was arrested early on the morning of the 1st of August, 1977.

At about 3:00 a.m. on August 1st, Bushong and two others were surprised in the woods southwest of Mammoth Springs, Arkansas by two officers, Bob Slayton and Ernie Rose, deputy sheriffs of Fulton County. These two officers had a "stakeout" observing marijuana plants that were hung in trees to dry. Three other officers arrived shortly thereafter, Sheriff Barker, Trooper Martz and Constable Rogers. Bushong and others were held at the scene until about 9:00 a.m.

Bushong testified that he was abused physically by Deputy Sheriff Slayton and Sheriff Barker. He said that Slayton grabbed his beard and struck him. He said Sheriff Barker observed this. At the time he was in a police vehicle. When asked if anyone else observed it, he said that Trooper Martz was sitting in his police car, immediately behind the car in which Bushong was sitting. He did not say any other

witness observed this mistreatment. Bushong testified that he observed one of the other defendants being abused in the trooper's car by Sheriff Barker. He said that one of the other defendants was taken down the road by the sheriff and it sounded to him as if the sheriff beat that defendant.

Trooper Martz testified that he arrived shortly after the arrest and left about 9:00 a.m. During cross-examination he testified that Constable Rogers accompanied him to the scene and was there throughout this period of time and left with him. Bushong never testified that Constable Rogers observed any mistreatment of him, coerced him in any way or abused any of the other defendants in any way.

All of the police officers except the constable testified and denied the allegations of coercion and mistreatment. That is, six officers testified.

Was Rogers a material witness or was he a casual witness? We cannot conclude that he was a material witness. If we decide that he was a material witness, then we might as well say all witnesses who could possibly have witnessed anything must be called by the State. That is an unreasonable burden to place upon the State. There must be some connection between the witness and the alleged acts of coercion or an opportunity to observe the alleged coercion. This record gives no indication that Rogers would have been a material witness in any regard except he happened to be present on the scene and might have observed something.

Bushong never mentioned Rogers in his testimony. One of the other defendants, who was called as a witness, did mention Rogers and it might be inferred from that witness' testimony that the constable, along with Martz and some others, harassed that defendant. But that would require some speculation on our part. It is not alleged that all the police officers abused the suspects or that they were all in a position to observe each alleged act of abuse.

We conclude, therefore, that the trial court did not err in failing to require the State to produce Rogers, nor can we say

the trial court's decision regarding the voluntariness of the statements was clearly erroneous.

Trooper Bob Reynolds testified during the trial that Bushong made a statement to him when he was transporting Bushong from the woods to Mammoth Spring. It is argued that the admission of this statement was erroneous because it surprised the appellant. (The Prosecuting Attorney said he was surprised too.) The appellant also argues a proper *Miranda* warning was not given and the trooper's testimony was totally inconsistent with what he had previously told the appellant's lawyer.

Reynolds testified during the *Denno* hearing and when asked if Bushong made any statements to him he replied "yes" but nobody asked him what the statements were. Later, before the trial, the attorneys for Bushong took a statement from Reynolds which was recorded and in that statement Reynolds said "The man didn't tell me anything."

Reynolds testified that he gave the *Miranda* warning orally to Bushong when he got in the car. However, apparently he failed to tell Bushong that interrogation must cease if at any time during the questioning the defendant wished to remain silent.

Bushong did not deny that he was given his *Miranda* warning at the time he was arrested earlier that morning. The arresting officers said it was given. Reynolds testified that he knew that Bushong had been advised of his rights and, in fact, did not question Bushong, but Bushong simply voluntarily told him about the marijuana. Bushong's attorney was given the opportunity to introduce into evidence the transcript of the tape recording of Reynolds' statement and Reynolds admitted that he had made the statement that the man didn't tell him anything. He explained during redirect-examination that he did not have his notes when he was examined by the lawyer.

The appellant argues that a continuance should have been granted so that the appellant's attorney could get the

tape recording of Reynolds' statement to impeach Reynolds' testimony.

A hearing was held on the voluntariness of the statement and the court concluded that it was voluntary. Nobody asked Reynolds what the statement was. There is no requirement that the *Denno* hearing must involve the details of the statement, only its voluntariness, with ample opportunity for the defense to test the burden of the State. See *Jackson* v. *Denno, supra; Silliman* v. *People,* 114 Colo. 130, 162 P. 2d 793 (1945). The trial court found that Bushong was properly warned of his rights and that the statement he made to Reynolds was admissible. The trial court granted Bushong's attorney a full opportunity to impeach Reynolds' testimony and a continuance to obtain the tape would not have materially aided the defense. We cannot say the trial court's findings were clearly erroneous.

Affirmed.

HARRIS, C.J., not participating.

BYRD, J. dissents.