Harvey WILLIAMS, Jr. *v.* STATE of Arkansas

CR 82-102                                    642 S.W.2d 887

Supreme Court of Arkansas
Opinion delivered December 13, 1982
[Supplemental Opinion on Denial of Rehearing January 10, 1983.]

10

*Danny P. Rodgers* and *James C. Graves,* for appellant.

*Steve Clark,* Atty. Gen., by: *Victra L. Fewell,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. Williams was convicted of having committed capital felony murder on February 23, 1981, in that he fatally stabbed Sidney Riley after raping her. In appealing from the ensuing sentence to life imprisonment without parole Williams contends primarily (1) that the trial judge erred in finding his confession to have been voluntary without first requiring the State to produce all witnesses material to the issue of voluntariness and (2) that the confession and certain clothing and other articles seized by the police should have been excluded as the fruits of a warrantless arrest made without probable cause.

Testimony taken at the hearing on the motions to suppress is pertinent to both contentions. The murder occurred on February 23 in the living room of the victim's home near Antoine, but was not discovered until two days later. Williams was living with his sister and her husband in

the next house down the road, some 300 yards away. Because of that proximity Sheriff Baker, State Police Office Ursery, and Prosecuting Attorney Arnold went out to interview Williams at about 4:00 p.m. on February 26, the day after the victim's body had been found at her home.

When the three men walked up to the house, Williams came across the yard to meet them. He recognized Arnold, who had represented him when he was convicted of manslaughter in 1967. Out of Williams's hearing the officers commented on the resemblance between Williams's toboggan cap and certain red fuzz found on a blanket under the victim's body when the crime was discovered. Arnold told them to warn Williams of his rights and to check with the police laboratory at Little Rock about the red fuzz.

Officer Ursery warned Williams before he was questioned. Williams first said he had not known the victim, but he then said he had seen her working in her yard a few days earlier. The four men walked to the victim's house, where the officers' vehicle was parked. While the sheriff began checking with the laboratory, Officer Ursery again warned Williams of his rights. Williams said that on the earlier day he had walked up the road, had seen Ms. Riley working in her garden, and had carried to her some mail that he took from her mail box. He tried to explain that he was the brother of her neighbor, but she became frightened, ran into the house, and threatened to call the police. He followed her into the kitchen, but did not go beyond that point into the living room.

Officer Ursery then asked Williams if he would go to Hope and take a polygraph examination to show that he only went into the kitchen area. Williams said he would. Sheriff Baker and Officer Ursery then drove Williams to the state police office at Hope. There Ursery used a printed waiver to again warn Williams of his rights while they waited a few minutes for the polygraph examiner to arrive. When he got there Williams refused to take the test. Another state police officer, Finis Duvall, then told Williams they needed to take his clothes for examination. Williams said he would tell the officers what they wanted to know. After interrogation he signed a highly damaging statement in

which he admitted having had intercourse with the victim and having caused her death. At the trial Officer Ursery testified that Williams had been in custody since they left the scene of the crime, but he was not told that he was under arrest until after he gave the statement.

Probable cause for an arrest existed when Sheriff Baker, Officer Ursery, and Williams left the scene to drive to Hope. Williams had first denied knowing the victim, but changed his story. His account of having removed mail from her mail box to take it to her was suspect, for such actions would hardly be performed with an innocent motive by a stranger. Williams admitted that the woman was frightened, that she ran to the house with a threat to call the police, and that he followed her into the house. His assertion that he stopped short of going into the living room could indicate guilty knowledge of where the crime occurred. Both officers attached significance to the red fuzz. The proof supplied the recognized elements of probable cause. *See Sanders* v. *State,* 259 Ark. 329, 334, 532 S.W.2d 752 (1976).

It was not essential, as the appellant argues, for the trial court to pinpoint the moment of arrest. The officers were not required to make an arrest when they first had probable cause to do so. *State* v. *Coleman,* 412 So.2d 532 (La., 1982). Although A.R.Cr.P. Rule 4.4 requires that the officer inform the arrested person that he is under arrest, such formal words are not essential to an arrest. Ark. Stat. Ann. § 43-412 (Repl. 1977); *Logan* v. *State,* 264 Ark. 920, 576 S.W.2d 203 (1979); *McDonald* v. *State,* 253 Ark. 812, 491 S.W.2d 36 (1973). Sheriff Baker testified that Williams was arrested at the scene. Officer Ursery testified that Williams was under restraint continuously after they left the scene to go to Hope. The trial court could reasonably conclude that the officers, having probable cause, deferred the arrest to permit Williams to clear himself by a polygraph examination. When he refused to do so, the arrest existed in fact without a formal statement. Hence the seizure of the clothing and the taking of the statement followed a lawful arrest and were not tainted.

The court was wrong, however, in not requiring the State to produce all material witnesses to the confession or

account for its failure to do so. At the suppression hearing it was shown by the State that Officers Ursery and Duvall were present when Williams gave his statement. They said that Williams had not asked for an attorney. Williams, however, then denied their assertions and testified that he also told Officer Reed, and perhaps Sheriff Baker as well, that he would not make a statement without a lawyer. Defense counsel, in asking that Reed and Baker be produced, cited our holding in *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981), where we said that the State fails to sustain its burden of proving voluntariness when it does not produce all the material witnesses or account for their absence. Under that decision and the prior cases that were cited, the error was prejudicial and requires a new trial. It is immaterial that Baker and Reed later testified at the trial that Williams did not ask for an attorney, for the statute requires the trial judge to determine voluntariness by hearing evidence out of the presence of the jury. Ark. Stat. Ann. § 43-2105.

The court properly refused to disqualify Arnold as the prosecutor merely because he had represented Williams when he was convicted in 1967. The motion to disqualify asserted that if the manslaughter conviction were used as an aggravating circumstance, Arnold might be in a position to use confidential information to the detriment of his former client. That possibility, however, was eliminated by Arnold's assurance that he would only use the proof of the conviction. That was done; so there is no indication of prejudice.

Since the jury was apparently selected at random, there is no proof of a systematic exclusion of blacks. We need not speculate about the possible proof upon a retrial. The court properly refused to quash the jury panel merely because a clerical employee who assisted in preparing the jury list had not taken the oath required by Ark. Stat. Ann. § 39-205.1 (Supp. 1981). The statute is not mandatory, and no question about the integrity of the list has been shown. *See Huckaby* v. *State*, 262 Ark. 413, 557 S.W.2d 875 (1977). Finally, we have repeatedly rejected the argument that a "death-qualified" jury gives rise to prejudicial error. *Ford* v. *State*, 276 Ark. 98, 633 S.W.2d 3 (1982).

Reversed and remanded.

HICKMAN, J., not participating.

Supplemental Opinion on Denial of Rehearing
delivered January 10, 1983

GEORGE ROSE SMITH, Justice, on rehearing. The State's petition for rehearing is denied. The case of *Hignite* v. *State*, 265 Ark. 866, 581 S.W.2d 552 (1979), is not controlling, because there the issue was merely that of voluntariness in general, not the State's failure to call all necessary witnesses to testify at the *Denno* hearing.

The appellant's petition for rehearing is also denied. In response to his request for clarification of the opinion, we state that a second *Denno* hearing will be proper.