Everett FOREMAN *v.* STATE of Arkansas

CR 94-645                                901 S.W.2d 802

Supreme Court of Arkansas
Opinion delivered June 19, 1995

168

*Wallace, Hamner & Adams*, by: *Dale E. Adams, Esq.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen. and Sr. Appellate Advocate, for appellee.

DONALD L. CORBIN, Justice. On May 15, 1993, Henry Callanen was fatally shot and robbed in the course of his employment as a security guard at a McDonald's restaurant on Roosevelt Road in Little Rock[1]. In connection with that event, appellant, Everett Foreman, was charged by felony information with committing the crimes of aggravated robbery and capital murder. A co-defendant, Durrell Childress, was likewise charged. In November 1994, pursuant to jury verdict, appellant was found guilty of the crimes of aggravated robbery and murder in the first degree. The trial court entered a judgment of conviction for murder in the first degree and sentenced appellant to life imprisonment. This appeal arises therefrom.

Appellant states four points of appeal, one of which is the trial court erred in denying his motion to suppress his out-of-court statement given to the police. We find this point has merit and reversible error occurred. The judgment is reversed on this point and the case remanded. We discuss this point as well as appellant's point that it was error to admit the hearsay statement of an unavailable witness for the benefit of the trial court upon retrial. *Clay* v. *State*, 318 Ark. 122, 883 S.W.2d 822 (1994). Our jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1-2(a)(2).

---

[1]The victim was also employed as an officer of the Little Rock City Police.

## ADMISSION OF APPELLANT'S STATEMENT

During custodial interrogation at the Little Rock police station on May 19, 1993, appellant gave an unsworn statement to Little Rock Police Detectives Randy Reaves and James Chandler. In the statement, appellant admitted driving Childress to McDonald's on the night of the shooting, waiting with Childress behind the restaurant, seeing Callanen emerge from the restaurant, hearing gunshots, running from the scene, and telling his girlfriend, Tracy Brooks, that he and Childress had "done something bad." In the statement, appellant implicated Childress as the shootist.

Appellant filed a motion to suppress the statement which, he alleged, was taken in violation of his federal constitutional Fourth, Fifth and Sixth Amendment rights and his rights under the Arkansas Constitution. An evidentiary hearing was conducted and testimony was given by Reaves, Chandler and appellant. Appellant testified that a third policeman, who was identified as former Little Rock Police Officer Tim Isenberg, threatened him shortly before and during a break in his interrogation by Reaves and Chandler. Isenberg did not testify at the hearing. The trial court ruled the statement was freely and voluntarily given and denied the suppression motion. At trial, the statement was admitted over appellant's objection.

Appellant argues the admission of his statement was reversible error in two respects: (1) the state failed to carry its burden of proof at the hearing to establish the statement was voluntarily given, and (2) the state violated his constitutional right to counsel. We agree with appellant's first argument. Therefore we do not address appellant's constitutional argument because its resolution is not so necessary to the determination of this case that it cannot otherwise be decided. *Grimmett* v. *State*, 251 Ark. 270-A, 476 S.W.2d 217 (1972).

Appellant relies upon *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981), for the proposition that the state's failure to call Isenberg as a material witness at the hearing precluded it from sustaining its burden to prove appellant's statement was voluntarily given. In *Earl*, the appellant challenged the admissibility of a confession he made to police during custodial interrogation on the ground that it was coerced. Sheriff Grady, the officer who escorted the appellant's co-defendant, Burton, from the interview

room and then escorted the appellant to the interview room, was not called as a witness at the hearing to determine the voluntariness of the appellant's statements. This court stated:

> The prosecution did not call Sheriff Grady as a witness at the *Denno* hearing. And, it is undisputed that in-custodial statements of defendants are presumed to be involuntary and the State has the burden of proving their voluntariness. When an accused offers testimony that his confession was induced by violence, threats, or coercion, it is incumbent upon the State to call all material witnesses who were connected with the contested confession or give an adequate explanation for their absence at the *Denno* hearing.

> Sheriff Grady, we think, was a material witness since his testimony would have reflected on the state of mind of the defendant at the time of entering the interview room by corroborating or negating the appellant's testimony concerning co-defendant Burton. Also, arguably, Sheriff Grady was a participant to the coercion by allegedly telling the appellant he had to "go in there and talk."

> Therefore, since the State failed to call a material witness at the *Denno* hearing, it did not sustain its burden of proof as to the voluntariness of the confession.

*Id.* at 14-15, 612 S.W.2d at 102-03 (citations omitted). The case was reversed and remanded for retrial.

In the present case, appellant testified at the hearing that, prior to his interrogation by Reaves and Chandler, Isenberg took him from a holding cell over to the police department. At that point, appellant testified:

A  We goes in the room and Detective Isenberg, he telling me that he know I done killed this police and he say — then I told him I don't know nothing, and then that's when, you know, he just starts to holler at me and then, you know, he pushed me up against the wall.

Q  Okay. Anything else happen?

A  Then he leaves out the room.

Q  What happens then?

A  The other two detectives come in.

Q  These two detectives that testified here today, Detective Chandler and Detective Reaves?

A  Right.

Appellant testified he reported Isenberg's actions to Reaves and Chandler during the interrogation and told them he would make a statement if they would keep Isenberg out. Appellant testified Reaves and Chandler left the interview room at one point in the interrogation during which time Isenberg re-entered the interview room and again yelled at him, pushed him against the wall, and told him he knew appellant killed Callanen. Appellant testified another "dark-haired officer" entered the interview room and told Isenberg to leave. Appellant testified he made the statement to Reaves and Chandler because he was afraid of Isenberg and that it was coerced.

Chandler testified at the hearing that appellant was read his rights at 1:40 p.m. and his statement, which was audio-taped, commenced at 3:50 p.m. Chandler testified appellant signed a written waiver form and made his statement voluntarily. Chandler testified Isenberg could have spoken with appellant and he (Chandler) would not have known. Reaves's testimony at the hearing was consistent with that of Chandler. Reaves also testified he had seen Isenberg with appellant shortly before appellant's interrogation by Reaves and Chandler began. Reaves testified it was possible appellant told him about his conversation with Isenberg and he (Reaves) did not write it down.

At the conclusion of the hearing, appellant cited *Earl* and objected to the state's failure to account for Isenberg, as well as to the alleged constitutional violation of his right to counsel. The trial court indicated it would allow the state three days to respond. The record, however, reveals that prior to the time the trial court ruled on the suppression motion, no response or explanation was offered by the state with respect to the objection arising from Isenberg's absence at the hearing.[2]

---

[2]At trial, the evidence showed that Isenberg left the Little Rock Police Department to return to his home state of Indiana and a job with the Indiana State Police.

■ In *Smith* v. *State*, 254 Ark. 538, 494 S.W.2d 489 (1973), we held that whenever an accused offers testimony that his confession was induced by violence, threats, coercion or offers of reward, the state has a burden to produce all material witnesses who were connected with the controverted confession or give an adequate explanation of their absence. We have reiterated this ruling many times. *E.g., Williams* v. *State*, 278 Ark. 9, 642 S.W.2d 887 (1982); *Earl*, 272 Ark. 5, 612 S.W.2d 98; *Bushong* v. *State*, 267 Ark. 113, 589 S.W.2d 559 (1979), *cert. denied*, 446 U.S. 938 (1980); *Gammel & Spann* v. *State*, 259 Ark. 96, 531 S.W.2d 474 (1976); *Russey* v. *State*, 257 Ark. 570, 519 S.W.2d 751 (1975); *Northern* v. *State*, 257 Ark. 549, 518 S.W.2d 482 (1975); *Smith* v. *State*, 256 Ark. 67, 505 S.W.2d 504 (1974). The state's failure to comply with this ruling has constituted reversible error in many cases. *E.g., Williams*, 278 Ark. 9, 642 S.W.2d 887; *Earl*, 272 Ark. 5, 612 S.W.2d 98; *Russey*, 257 Ark. 570, 519 S.W.2d 751; *Northern*, 257 Ark. 549, 518 S.W.2d 482; Smith, 256 Ark. 67, 505 S.W.2d 504; *Smith*, 254 Ark. 538, 494 S.W.2d 489.

■■ In determining whether a witness is "material" this court has stated "[t]here must be some connection between the witness and the alleged acts of coercion or an opportunity to observe the alleged coercion." *Bushong*, 267 Ark. 113, 121, 589 S.W.2d 559, 564. In the present case, we conclude Isenberg was a material witness and the state gave no adequate explanation for his absence at the hearing.

■ In its brief, the state argues this point of appeal is procedurally barred because appellant failed to allege in his suppression motion that his statement was coerced by any police officer and therefore the state was unfairly surprised when the issue was raised at the hearing. The state requests we modify the *Smith* rule to clarify that the defendant has an initial burden to plead the custodial statement was the product of threats or abuse. We decline to do so. Appellant's suppression motion raised the issue of the voluntariness of his statement to the police. The trial court permitted the state a three-day period to respond to appellant's objection arising from Isenberg's absence at the hearing prior to issuing its ruling. The state could have requested a continuance of the hearing for the purposes of producing Isenberg or adequately explaining his absence. On this record, consistent with

*Smith*, 254 Ark. 538, 494 S.W.2d 489, and its progeny, we find the trial court committed reversible error in denying the suppression motion.

## ADMISSION OF HEARSAY STATEMENT
## OF UNAVAILABLE WITNESS

During questioning at the Little Rock police station on May 19, 1993, appellant's girlfriend, Tracy Brooks, gave an unsworn statement to two Little Rock Police Department officers. In the statement, Brooks repeated statements that she asserted were made to her by appellant shortly after the May 15 shooting. Brooks's statement corroborated appellant's May 19 statement in many respects but also differed significantly by implicating appellant as the shootist.

On the day before appellant's trial was to commence, Brooks was declared an unavailable witness under A.R.E. Rule 804(a)(2) and Rule 804(a)(5) pursuant to the state's motion. Her statement was ruled admissible under Rule 804(b)(3) as a statement against interest and under Rule 804(b)(5) as a statement not specifically covered by a hearsay rule exception but having equivalent circumstantial guarantees of trustworthiness (the so-called "residual hearsay exception"). Brooks's statement was admitted at trial over appellant's objection.

Appellant argues Brooks was not an unavailable witness and her statement did not qualify for admission under Rule 804(b)(3) or Rule 804(b)(5). We conclude that, although the trial court did not err in ruling Brooks was an unavailable witness, it did err in ruling her statement was admissible under Rule 804(b)(3) or Rule 804(b)(5).

## UNAVAILABILITY

The record shows the trial court's ruling that Brooks was unavailable was based upon substantial evidence introduced by the state at pretrial hearings on the state's motions first to continue the trial due to its inability to locate Brooks and later to declare her unavailable. At the hearing on the motion for continuance, the testimonies of two investigators of the prosecuting attorney's office and an officer of the Little Rock Police Department regarding their unsuccessful attempts to serve Brooks with

a subpoena for trial showed they had made repeated efforts on several days to locate her at her reported whereabouts first with appellant's mother and then with her siblings in Little Rock. At the conclusion of the hearing on the motion for continuance, the trial judge stated: "[w]e're having trouble locating a witness the State considers crucial and it's not because they're dilatory. It's because — I think because the defendant's family is assisting in this[.]"

We conclude the state satisfied its burden of proving Brooks was unavailable by showing it made a good faith effort to procure her attendance at trial. *Register* v. *State*, 313 Ark. 426, 855 S.W.2d 320 (1993); *Bussard* v. *State*, 300 Ark. 174, 778 S.W.2d 213 (1989). We find no abuse of discretion by the trial court in ruling Brooks was unavailable. *Lewis* v. *State*, 288 Ark. 595, 709 S.W.2d 56 (1986).

## STATEMENT AGAINST INTEREST EXCEPTION — RULE 804(B)(3)

Rule 804(b)(3) provides the following is not excluded by the hearsay rule if the declarant is unavailable as a witness:

> (3) Statement against interest. *A statement which was at the time of its making* so far contrary to the declarant's pecuniary or proprietary interest, or *so far tended to subject him to civil or criminal liability or to render invalid a claim by him against another or to make him an object of hatred, ridicule, or disgrace, that a reasonable man in his position would not have made the statement unless he believed it to be true.* A statement tending to expose the declarant to criminal liability and offering to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. A statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused, is not within this exception. [Emphasis added.]

The trial court stated Brooks's statement was admissible under Rule 804(b)(3) because "[a]s Everett Foreman's live-in girlfriend, the statement, extremely detrimental to her boyfriend, would surely subject her to unmitigated hatred, ridicule or dis-

grace from Mr. Foreman as well as his family, with whom the two lived." The trial court thereby relied upon the aspect of Rule 804(b)(3) categorized as a statement against the declarant's "social interest." The statement against social interest exception is not recognized by the federal courts or by the majority of the state courts. Hence case law is scarce. David F. Binder, *Hearsay Handbook* § 29.05 (3d ed. 1991 & Supp. 1994). The trial court cited no authority for its ruling and we are unaware of any Arkansas decisional law that has previously applied this exception.

We agree with the state's virtual concession in its brief that Brooks's statement was not admissible as a statement against her social interest. *See, e.g., Franco* v. *State*, 866 P.2d 247 (Nev. 1993) (rejecting admission of wife's hearsay statement admitting that her husband may have killed someone ås too indirect or remote to qualify under the hearsay exception for statements against social interest); *State* v. *Stevens*, 490 N.W.2d 753 (Wis. Ct. App. 1992) (stepdaughter's hearsay statement reporting her stepfather's burglary was too attenuated and uncertain to guarantee its reliability and permit its admission under the statements against social interest exception).

■ The state, proceeding on the principle that we may affirm the trial court's ruling if the correct result was reached, asserts in its brief that Brooks's statement was admissible under Rule 804(b)(3) as a statement against her *penal* interest because it was a statement that tended to subject her to criminal liability under Ark. Code Ann. § 5-54-122 (Repl. 1993). This argument is not persuasive. Section 5-54-122 criminalizes the filing of a report with law enforcement of another person's alleged criminal activity by one who knows the report is false. The state's use of this statute is incongruous with the philosophy underlying the hearsay exception for statements against penal interests which is that the declarant would not have made the statement unless it was true because its making may subject the declarant to civil or criminal liability. It is this potential punishment that provides the circumstantial guaranty of trustworthiness upon which this hearsay exception is based. In contrast, section 5-54-122 does not punish the declarant who makes a true statement, only a false one. We conclude the trial court's admission of Brooks's statement under Rule 804(b)(3) was prejudicial error.

## RESIDUAL HEARSAY EXCEPTION — RULE 804(B)(5)

Rule 804(b)(5) provides, in pertinent part, the following is not excluded by the hearsay rule if the declarant is unavailable as a witness:

> (5) Other exceptions. A statement not specifically covered by any of the foregoing exceptions *but having equivalent circumstantial guarantees of trustworthiness*, if the court determines that (i) the statement is offered as evidence of a material fact; (ii) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (iii) the general purposes of these rules and the interests of justice will best be served by admission of the statements into evidence. [Emphasis added.][3]

The trial court stated Brooks's statement was admissible under Rule 804(b)(5) because "the statement is highly corroborative of the statements made by Childress and Foreman; the state has made every reasonable effort and more to call Ms. Brooks to testify at trial and; justice will best be served by admitting Ms. Brooks' statement as it is trustworthy under the conditions on which it was taken." Appellant argues the statement did not qualify under Rule 804(b)(5) because it lacked equivalent circumstantial guarantees of trustworthiness and its admission violated the federal constitutional Confrontation Clause. We agree.

■ In the context of a Confrontation Clause analysis, the United States Supreme Court examined whether guarantees of trustworthiness were shown with respect to a hearsay statement of a child declarant sought to be admitted under Idaho's residual hearsay exception. The residual hearsay exception at issue was that applicable for the statement of a declarant even though the declarant is available as a witness. However, the Court assumed for purposes of its analysis, without deciding, that the child declarant was an unavailable witness. The Court ruled the residual hearsay exception was not a "firmly rooted" hearsay exception. The Court ruled trustworthiness guarantees required for a

---

[3]A.R.E. 803(24) sets forth an identical exception for the hearsay statement of a declarant even though the declarant is available as a witness.

statement's admission under that exception must be shown from the totality of the circumstances that surrounded the making of the statement and rendered the declarant particularly worthy of belief. *Idaho* v. *Wright*, 497 U.S. 805 (1990). The Court rejected the state's contention that evidence corroborating the hearsay statement may properly support a finding that the statement bears such trustworthiness guarantees. The Court ruled to be admissible the hearsay evidence "must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Id.* at 822.

When the factors relied upon by the trial court for its conclusion that Brooks's statement was trustworthy are reviewed, eliminating references to corroborating evidence, these factors remain: (1) the statement was made on the same day as appellant's arrest thereby leaving Brooks little time or opportunity to fabricate the statement; (2) Brooks was read her rights two hours prior to the time she gave her statement; and (3) in *United States* v. *Lyon*, 567 F.2d 777 (8th Cir. 1977), *cert. denied*, 435 U.S. 918 (1978), the agent who took that unavailable declarant's statement "was able to testify in detail about how he took the witnesses [sic] [unsworn] testimony and transcribed it."

■ We find the trial court's reliance upon the first and third factor is misplaced. First, appellant allegedly told Brooks about the events of May 15 immediately after they occurred. Therefore, even though appellant was not arrested for several more days, Brooks cannot be said to have lacked time or opportunity to fabricate the statement. Second, *Lyon* is not persuasive because the officers who took Brooks's statement did not testify at the evidentiary hearings. On this record, we cannot say that Brooks's unsworn statement contained the "equivalent circumstantial guarantees of trustworthiness" inherent in the other hearsay exceptions under Rule 804(b). Therefore it was error to admit Brooks's statement under the residual hearsay exception. *See Doles* v. *State*, 275 Ark. 448, 631 S.W.2d 281 (1982) (reversing the trial court's judgment that the Rule 804(b)(5) exception applied to an unsworn statement given to police at the crime scene by the victim's live-in girlfriend).

■ In his remaining two points for reversal, appellant argues, first, the trial court erred in admitting the testimony of

the McDonald's restaurant owner that appellant, a former employee at the Roosevelt Road store, was fired from that position, and, second, the trial court erred in admitting certain testimony on direct examination of state's witness, Lottie Sims, a former girlfriend of Childress, that, as between appellant and Childress, appellant was the "leader" of the two men. Our review of the record shows neither of these arguments has merit.

In accordance with Ark. Sup. Ct. R. 4-3(h), the transcript has been examined for prejudicial errors objected to by appellant but not argued on appeal and we conclude no such errors occurred.

The trial court's judgment is reversed and remanded.