Daniel REMETA *v.* STATE of Arkansas

CR 87-214                                              777 S.W.2d 833

Supreme Court of Arkansas
Opinion delivered October 2, 1989
[Rehearing denied October 30, 1989.]

*Douglas, Hewett & Shock*, by: *J. Randolph Shock*, for appellant.

*Steve Clark*, Att'y Gen., by: *Olan W. Reeves*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Daniel Remeta, was convicted of capital felony murder and sentenced to death on May 5, 1987. Upon initial appeal, the case was remanded to the trial court to determine whether Remeta was competent to waive his right to appeal. That issue subsequently became moot, and the capital murder conviction and death sentence are currently being appealed on six points of error.

On February 11, 1985, Linda Marvin, a convenience store clerk, was killed at her workplace in Fort Smith, Arkansas, by ten gun shot wounds that had been inflicted at close range. The cash register was empty. Remeta was arrested in Colby, Kansas, on February 13, 1985, following a shoot-out with local authorities. Remeta and a codefendant were charged with the murder of Ms. Marvin; Remeta was convicted of capital felony murder and sentenced to death.

## I. SUFFICIENCY OF THE EVIDENCE TO SUSTAIN THE CONVICTION

Remeta contends that the trial court erred by denying his motion for a directed verdict based on the sufficiency of the evidence, which was made at the close of the State's case. Although Remeta did move for a directed verdict at the close of the State's case, he did not move for a directed verdict at the close of the evidence pursuant to A.R.Cr.P. Rule 36.21(b). This rule provides that:

> When there has been a trial by jury, the failure of a defendant to move for a directed verdict at the conclusion of the evidence presented by the prosecution and at the close of the case because of insufficiency of the evidence will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the jury verdict.

A renewal of the motion would have been to no avail in this case, however, as the evidence was more than sufficient to support the verdict. *Houston* v. *State*, 299 Ark. 7, 771 S.W.2d 16 (1989).

A motion for a directed verdict at trial challenges the sufficiency of the evidence. *Hughes* v. *State*, 295 Ark. 121, 746 S.W.2d 557 (1988). In determining the sufficiency of the evidence upon appeal, the court not only considers the testimony that tends to support the verdict, but also views the testimony in the light most favorable to the appellee. *Williams* v. *State*, 289 Ark. 69, 709 S.W.2d 80 (1986).

The trial court's decision is affirmed if there is any substantial evidence to support the verdict. *Williams* v. *State, supra.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other, forcing or inducing the mind to pass beyond a suspicion or conjecture. *Holloway* v. *State*, 293 Ark. 438, 738 S.W.2d 796 (1987) (citing *Williams* v. *State*, 289 Ark. 443, 711 S.W.2d 825 (1986)). In addition, the law makes no distinction between circumstantial evidence and direct evidence. *Perry* v. *State*, 277 Ark. 357, 642 S.W.2d 865 (1982).

In its case in chief, the State was required to prove that the defendant had committed the elements comprising the offense of capital murder. A person commits capital murder when:

> (1) Acting alone or with one (1) or more other persons, he commits or attempts to commit . . . robbery, . . . and in the course of and in furtherance of the felony, . . . he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; . . .

Ark. Code Ann. § 5-10-101(a)(1) (Supp. 1987).

By using robbery as the underlying felony in this capital murder offense, the State also had to show that, "with the purpose of committing a [robbery] . . . , [one] . . . employs or threatens to immediately employ physical force upon another." Ark. Code Ann. § 5-12-102(a) (Supp. 1987).

The State showed that Remeta had purchased the murder weapon and enlisted the aid of a "wino" to purchase the bullets. An eyewitness placed Remeta at the scene of the crime shortly before the crime occurred. Remeta's own statement, given to police officials four days after the robbery and murder, acknowl-

edged his presence at the crime scene during its commission, that he knew that a robbery would take place, and that he knew that his friend who entered the store and committed the robbery and murder had been armed with a gun. The statement also indicated that he knew that his friend had shot other people while committing previous robberies.

The State also proved that the victim had been shot ten times with a .22 caliber gun and that the bullet fragments found in the victim's body, and at the crime scene, were fired from the same .22 caliber gun which was found near Remeta when he was arrested in Kansas. It was also shown that $535.00 was missing from the cash register of the convenience store by comparing the last cash register receipt before the murder with the owner's records.

At the close of the State's case, Remeta moved for a directed verdict; he asserted that not only was there no evidence to show that he caused the death of the victim, but that there was no evidence to show that he aided, assisted, or induced her death.

In *Hallman & Martin* v. *State*, 264 Ark. 900, 575 S.W.2d 688 (1979), we affirmed the defendant's conviction of capital murder in the furtherance of a kidnapping. Martin's participation in the murder was limited to providing the gun that was given to the person who committed the murder and being at the crime scene during the commission of the murder. Martin participated to this extent with the knowledge that violence to the victim would probably occur.

Similarly, Remeta furnished the gun and bullets used to kill the store clerk during the robbery of the convenience store. Remeta was also present at the crime scene during the commission of the robbery with the knowledge that the person committing the robbery had shot other people during previous robberies. Suffice it to say, Remeta participated to the extent that he knew violence to the victim would probably occur. Putting these facts together, we find that the evidence presented supports Remeta's conviction for capital murder.

We decline to address Remeta's cursory allegation that the trial court erred by failing to direct a verdict based upon the affirmative defense provided in Ark. Code Ann. § 5-10-101(b), as

he did not make a motion for a directed verdict at the close of the case pursuant to A.R.Cr.P. Rule 36.21(b). In addition, Remeta did not raise this issue in the proceedings below, and his failure to do so at the trial court level procedurally precludes him from raising this argument now. *Reed* v. *Alcoholic Beverage Control Div.*, 295 Ark. 9, 746 S.W.2d 368 (1988).

## II. SUPPRESSION OF APPELLANT'S STATEMENTS

Remeta contends that his initial statement given to police authorities on February 13, 1985, was illegally obtained and that, as a result, all of his subsequent statements were inadmissible. He further supports his contention of the inadmissibility of his February 15, 1985, statement with allegations of continued confinement without the aid of requested counsel and police brutality in the form of physical abuse. He also challenges the voluntariness of his statements on the basis that the State failed to secure material witnesses at the suppression hearing and at the trial to testify as to the medication which he received while hospitalized for a gun shot wound to his hip. As a final challenge to the voluntariness of his statements, Remeta claims unkept promises made to him by a law enforcement official.

In reviewing the admissibility of Remeta's statement, the court makes an independent determination based upon the totality of the circumstances and reverses the actions of the trial court only if it is found that the court's finding was clearly against a preponderance of the evidence. *Gooden* v. *State*, 295 Ark. 385, 749 S.W.2d 657 (1988) (citing *Smith* v. *State*, 286 Ark. 247, 691 S.W.2d 154 (1985)).

In determining whether Remeta's statement was voluntary, the factors considered in the totality of the circumstances include the age, education, and intelligence of the accused, the advice or lack of advice of his constitutional rights, the length of detention, the repeated or prolonged nature of the questioning, and the use of physical or mental punishment. *Mitchell* v. *State*, 295 Ark. 341, 750 S.W.2d 936 (1988) (citing *Hatley* v. *State*, 289 Ark. 130, 709 S.W.2d 812 (1986)).

In this case, although the February 13, 1985, statement was not introduced by the State in Remeta's trial, Remeta argues that the circumstances surrounding the statement taint all of his

subsequent statements and thereby make them inadmissible. The pertinent facts in regard to this initial statement are that Remeta was arrested in Kansas on February 13, 1985, and hospitalized that day due to his hip wound. A guard was placed at the hospital. Police officials interviewed Remeta at the hospital after he had been treated by the hospital staff and after they had determined from the hospital staff that the only medication that he had received had been a tetanus shot.

Evidence was presented that during the interview, which lasted about an hour, Remeta was orally advised of his constitutional rights and he agreed to answer questions; he did not ask for an attorney at any time during this interview and no promises of leniency or threats were made to him. The police authorities found Remeta to be coherent, cooperative, and able to answer their questions and they discontinued the interview upon their own volition.

Remeta contends, to the contrary, that at the initial interview he was drunk and sleepy, that he requested an attorney, and that he was told that he could have a phone call only after he talked.

The issue of whether Remeta requested an attorney before he made his statement is a question of fact to be resolved by the trial court. *Johnson* v. *State*, 292 Ark. 632, 732 S.W.2d 817 (1987). Likewise, it is the trial court's responsibility to determine if a statement is given freely and voluntarily without any compelling influence. *Holden* v. *State*, 290 Ark. 458, 721 S.W.2d 614 (1986) (citing *Rhode Island* v. *Innis*, 446 U.S. 291 (1980)).

We cannot say, under the facts before us, that the trial court's finding that the initial statement was voluntary and admissible is outweighed by a preponderance of the evidence in favor of the appellant.

The circumstances surrounding Remeta's February 15, 1985, statement differ from those surrounding his February 13, 1985, statement in that he was in a county jail, he signed a rights waiver form, and the interview was tape recorded. The interview lasted approximately 30 minutes. Evidence was again presented that Remeta was cooperative and did not request an attorney before answering the questions of the police authorities. Remeta's

allegations of threats and promises were refuted and Remeta did not present evidence in support of his allegations.

■ Again, we cannot say that the trial court's finding that the resulting statement was voluntary and admissible is outweighed by a preponderance of the evidence in favor of the appellant.

Remeta cities *Shelton* v. *State*, 287 Ark. 322, 699 S.W.2d 728 (1985), for his contention that all statements made after the one illegally obtained are inadmissible. Assuming, arguendo, that the February 13, 1985, statement was illegally obtained, the facts in *Shelton* can be easily distinguished from those in this case. Shelton, an eighteen-year-old male of marginal intelligence and maturity, who had never been placed under arrest or in jail, was awakened at 2:30 a.m. and summoned from the bunkhouse by three police officers using a P.A. system and questioned in a police car without first having been read his *Miranda* rights. It was held that this first statement, given in response to the officer's direct inquiry, should not have been admitted.

Immediately after his first confession, Shelton was handcuffed and driven to police headquarters, where his formal statement was taken at about 4:00 a.m. Under these circumstances, where the original confession had been made under illegal influence, the influence will be presumed to continue and color all subsequent confessions unless the contrary is shown. As there was no substantial change in the environment, nor events to interrupt or alter the effects of the condition of the first statement, the second statement was also suppressed. It was also held that a subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement would suffice to remove the conditions that precluded admission of the earlier statement.

■ In this case, 27-year-old Remeta, who had been in trouble with authorities since the age of thirteen, was interviewed in a hospital by police authorities from 9:44 p.m. to 10:45 p.m. Prior to the interview, he had been advised of his *Miranda* rights. Even if the first statement had been deemed to have been involuntary, the intervening two day time period, the change of environment from the hospital to the county jail, and Remeta's signed rights waiver form would be sufficient to remove any taint

from the February 15, 1985, statement which was admitted into evidence at trial.

Remeta also argues prejudicial error in that the State failed to secure the appearance of material witnesses to testify as to the medication he received prior to giving his statement in the hospital, relying on *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981).

Remeta's reliance on *Earl* is misplaced. When an accused offers testimony that his confession was induced by violence, threats, or coercion, then it is incumbent on the State to call all material witnesses who were connected with the contested confession or explain their absence. *Earl* v. *State, supra.* The facts in this case can be distinguished, however.

It was held in *Earl* that the State did not meet its burden of proving the voluntariness of Earl's confession because they failed to call a material witness, Sheriff Grady.

Earl alleged that detectives extracted his confession by verbal threats and by one menacingly hitting a big belt in his hand. He also testified that a codefendant told him, immediately prior to Sheriff Grady's escorting Earl into an interview room, that he had been hit in the stomach with a belt. Sheriff Grady had accompanied the codefendant, after his confession, from the interview room back to his cell; he then took Earl out of the cell and delivered him to the interview room.

The court held that Sheriff Grady was a material witness since his testimony would have reflected on Earl's state of mind at the time of entering the interview room by corroborating or negating Earl's testimony concerning his codefendant.

In this case, the medical personnel could not be regarded as witnesses connected with the contested confession, since they were not working in concert with the officers, nor were they present during the taking of Remeta's statement by police officials. In addition, there was no claim by Remeta that his statement was induced by violence, threats, or coercion to which these parties would be witnesses. Therefore, it was not the State's responsibility to produce these witnesses who had no connection to the contested statement.

Remeta's final allegation that he was made promises of leniency for his codefendant in exchange for his statements is also not convincing. His testimony conflicts with that of all of the officers who testified; their testimony stated that no promises had been made to him. With respect to the conflict in testimony as to whether a promise was made, the trial court obviously resolved it against Remeta, and we cannot say that the trial court's ruling was clearly erroneous. *Harvey* v. *State*, 272 Ark. 19, 611 S.W.2d 762 (1981).

## III. REFUSAL TO EXCUSE JURY PANELIST FRIDDLE FOR CAUSE

Remeta alleges that jury panelist Judy Friddle should have been excused for cause on the basis that she stated she would "probably go with the majority" and let them change her mind when she was the only juror who felt that the defendant in the case had not been proved guilty beyond a reasonable doubt or had an affirmative defense to the charge. The trial court refused to excuse Friddle for cause, and defense counsel used a peremptory challenge to excuse her.

In order to prevail on this point, Remeta must show that a juror actually seated should have been struck for cause. In order to make this showing, he must demonstrate that after exhausting all of his peremptory challenges, he was forced to accept a juror against his wishes. *Watson* v. *State*, 289 Ark. 138, 709 S.W.2d 817 (1986). Therefore, we do not consider Remeta's arguments in regard to this jury panelist, who was not accepted by him but excused by peremptory challenge. *Gardener* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988).

## IV. REFUSAL TO EXCUSE JUROR BARHAM FOR CAUSE

Remeta contends next that, after having exhausted all of his peremptory challenges, the trial court erred by refusing to excuse William Barham for cause on the basis that he was biased. To succeed on this point, Remeta must demonstrate that he was forced to accept this juror against his wishes.

Jurors are presumed unbiased, and the burden of proving actual bias is on the party challenging the juror. *Fleming* v. *State*,

284 Ark. 3907, 681 S.W.2d 390 (1984). We will also look closely at whether a particular juror who has been challenged was actually unbiased, notwithstanding the State's success in rehabilitating the juror. *Pickens* v. *State*, 292 Ark. 362, 730 S.W.2d 230, *cert. denied*, 484 U.S. 917 (1987). However, the trial court's decision will not be reversed absent an abuse of discretion. *Fleming, supra.*

Remeta asserts the claim that Barham was biased as a seated member of the jury. Barham did state that his father-in-law and sister-in-law had been murdered, about five years previously, and that two persons had been convicted for their murders. One person had received life imprisonment, and the other person had received the death penalty. He stated unequivocally, however, that he could decide the case to be heard based upon the evidence presented and that he could follow the jury instructions as presented by the judge. Barham also stated that he would presume the accused innocent until proved otherwise and that he would not hold it against the accused if he chose not to testify.

Upon further voir dire, Barham said that he could be a fair juror and that, notwithstanding the circumstances of his in-laws' deaths, he could decide the case fairly. Remeta did not ask the trial court to excuse Barham for cause prior to his selection as a member of the jury. In fact, upon the completion of Barham's voir dire and his acceptance by the State as a potential juror, Remeta merely acknowledged that he had used all of his peremptory challenges.

We have held that a juror is acceptable as long as he can decide the case based upon the evidence presented at trial. *See Swindler* v. *State*, 264 Ark. 107, 569 S.W.2d 120 (1978), *cert. denied*, 449 U.S. 1057 (1980). Consequently, we hold that it was not an abuse of the trial court's discretion to fail to excuse Barham for cause.

## V. TRIAL COURT'S COMMENT ON THE EVIDENCE

Remeta also alleges that the trial court commented on the evidence during the State's case in chief and thereby violated article 7, section 23 of the Arkansas Constitution. That section provides that "judges shall not charge juries with regard to matters of fact."

The appellant did not raise this issue with the trial court and, therefore, it will not be considered for the first time on appeal. *Bonds* v. *State*, 296 Ark. 1, 751 S.W.2d 339 (1988).

## VI. PROSECUTION'S COMMENT, DURING CLOSING ARGUMENT, ON THE APPELLANT'S RIGHT NOT TO TESTIFY

Remeta claims that the State commented on his right to not testify at the trial during its closing argument. Here again, he failed to make an objection with the trial court. As a result, this issue will not be considered for the first time on appeal. *Bonds v. State, supra.*

## VII. CONCLUSION

In accordance with Ark. Sup. Ct. R. 11(f), we have reviewed the record for all objections decided adversely to the appellant and have found no reversible error.

In conclusion, we find no merit to any of the six points of error which Remeta raised on appeal, and we therefore affirm the judgment of the trial court.

Affirmed.