Kevin Warzell BROWN and Justin Scott Thornhill *v.* STATE of Arkansas

CR 00-1227                                                    60 S.W.3d 422

Supreme Court of Arkansas
Opinion delivered November 29, 2001
[Petition for rehearing denied January 10, 2002.*]

---

\* GLAZE and HANNAH, JJ., would grant.

*John Joplin*, Deputy Public Defender, for appellants.

*Mark Pryor*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellants Kevin Warzell Brown and Justin Scott Thornhill appeal from the judgment of the Sebastian County Circuit Court convicting them of aggravated robbery. The robbery occurred on July 6, 1999, at the Convenience Corner store in Fort Smith. The robber was described as a white male, approximately five feet, five inches to five feet, seven inches tall and 120-150 pounds. He wore a ski mask and carried a gun in one hand and a blue, plastic Wal-Mart shopping bag in the other. The State alleged that Thornhill was the one who actually robbed the store while Brown waited outside in the car. Both men were sentenced as habitual offenders. Brown received life imprisonment while Thornhill received thirty years' imprisonment. Appellants raise a total of eight points for reversal. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We reverse and remand for a new trial.

For their first point for reversal, Appellants argue that the trial court erred in denying their motion for a directed verdict on the sole charge of aggravated robbery. They assert that there was insufficient evidence showing that they committed the robbery with a deadly weapon. They rely on (1) the victim's testimony that she thought the gun was fake, and (2) the fact that the only gun recovered from Appellants' apartment was a BB gun. Appellants argue that, at a minimum, the victim's testimony provided a rational basis to instruct the jury on the lesser-included offense of robbery. We agree with the latter argument.

■■ No right has been more zealously protected by this court than the right of an accused to have the jury instructed on lesser-included offenses. *Rainey v. State*, 310 Ark. 419, 837 S.W.2d 453 (1992); *Robinson v. State*, 269 Ark. 90, 598 S.W.2d 421 (1980). It is reversible error to refuse to give an instruction on a lesser-included offense when the instruction is supported by even the slightest evidence. *See Ellis v. State*, 345 Ark. 415, 47 S.W.3d 259 (2001); *Harshaw v. State*, 344 Ark. 129, 39 S.W.3d 753 (2001). Thus, we will affirm the trial court's decision to exclude an instruction on a lesser-included offense only if there is no rational basis for giving the instruction. *Id. See also* Ark. Code Ann. § 5-1-110(c) (Repl. 1997).

Here, the evidence shows that Dottie Harrison was working at the Convenience Corner on July 6, 1999. Around 1:30 a.m., a man walked into the store wearing a ski mask and carrying a gun in one hand and a blue, plastic Wal-Mart bag in the other. The robber told Harrison to give him the money. He repeated his demand three times. Harrison thought that it was a friend playing a joke on her until the third time that the man demanded the money. According to Harrison, the robber had the gun in his hand the whole time, holding it kind of sideways and pointing it at her. When asked to describe the gun, Harrison stated: "I don't know a whole lot about guns, but it didn't look right, and that's what I told the detectives that night. It was strange." She testified on cross-examination that the gun looked fake, but she was not sure about it. She admitted telling the police, on the morning of the robbery, that "[t]he gun appeared to be black in color and it looked fake to me." She also admitted stating that her grandchildren played with toy guns and that the gun used in the robbery "just looked plastic to me." On redirect, Harrison stated that if she had known that the gun was not real, she would not have given the robber any money.

■ At the close of all the evidence, Appellants sought instructions on the lesser offenses of robbery and theft by threat. The trial court refused both instructions. We agree with the trial court's ruling on the offense of theft by threat, as this court has consistently held that theft of property, whether by threat or otherwise, is not a lesser-included offense of aggravated robbery. *See Robinson v. State*, 303 Ark. 351, 797 S.W.2d 425 (1990); *Rolark v. State*, 299 Ark. 299, 772 S.W.2d 588 (1989). We disagree, however, with the trial court's refusal to instruct on robbery.

■■ Robbery is a lesser-included offense of aggravated robbery. *See Tarkington v. State*, 313 Ark. 399, 855 S.W.2d 306 (1993);

*Henson v. State,* 296 Ark. 472, 757 S.W.2d 560 (1988). "A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another." Ark. Code Ann. § 5-12-102(a) (Repl. 1997). It becomes aggravated robbery if the person is armed with a deadly weapon or represents, by word or conduct, that he is so armed. *See* Ark. Code Ann. § 5-12-103(a)(1) (Repl. 1997). "Generally a robbery instruction is required when the charge is aggravated robbery." *Henson,* 296 Ark. at 474, 757 S.W.2d at 561. The exception to that general rule is when the evidence is so conclusive as to show that only aggravated robbery could have been committed. *Id.* Appellants contend that the victim's testimony that the gun looked fake provided a rational basis for the jury to acquit on the charge of aggravated robbery and convicted on the lesser charge of robbery. We agree.

In *Fairchild v. State,* 269 Ark. 273, 600 S.W.2d 16 (1980), this court held that the victim's perception about a weapon was the key in determining whether there was sufficient proof of aggravated robbery. There, the appellant committed a robbery while holding his hand under his shirt in an attempt to convey to the victim that he was armed with a gun. The jury convicted him of aggravated robbery, but this court reduced the conviction to robbery. This court relied on the fact that the victim "did not attach any special significance to this conduct and certainly did not perceive it to be in any way threatening." *Id.* at 275, 600 S.W.2d at 17. Accordingly, this court held: "Since the appellant's subjective intent does not control what is objectively conveyed to another, a hand under a shirt has no meaning in the context of the aggravated robbery statute *unless the victim at least perceives it to be menacing." Id.* (emphasis added).

In *Clemmons v. State,* 303 Ark. 354, 796 S.W.2d 583 (1990), this court affirmed the appellant's aggravated-robbery conviction on the ground that there was no doubt that the appellant had represented, by both words and conduct, that he was armed with a deadly weapon. There, as in *Fairchild,* the victim did not observe a gun. Rather, she indicated that the robber had what she assumed was his finger inside his pocket. However, unlike Fairchild, Clemmons made a verbal representation that he did have a gun. Specifically, Clemmons told the victim that he had a gun and he would shoot her if she did not give him her purse. This court held that where a defendant verbally represents that he is armed with a deadly weapon, it is sufficient to convict for aggravated robbery, regardless of whether he actually had such a weapon. On the other hand,

"[w]here no verbal representation is made and only conduct is in evidence, *the focus is on what the victim perceived concerning a deadly weapon.*" *Id.* at 357, 796 S.W.2d at 585 (emphasis added).

The obvious difference between the facts in this case and those in *Fairchild* and *Clemmons* is that the victim here actually saw a weapon in the robber's hand. We do not believe, however, that this difference renders those holdings inapplicable to the present appeal. The issue is still the same, *i.e.*, whether the victim perceived that the robber possessed a *deadly* weapon.

■ Here, unlike the robber in *Clemmons*, there is no evidence that the robber, Appellant Thornhill, made any verbal representations as to whether the gun was real or fake. Thus, the focus should be on what the victim perceived about the nature of the weapon. The victim testified that she initially thought the robbery was a joke and that the gun looked fake or strange or plastic. Her testimony constitutes at least slight evidence that the jury could have considered in determining whether Appellants were guilty of aggravated robbery or merely robbery. Moreover, the jury could have concluded, based on the fact that only a BB gun was recovered from Appellants' apartment, that the robbery was not committed by use of a deadly weapon. It is for the jury, not the court, to weigh the evidence and credit that which it believes to be the most cogent. *Robinson*, 269 Ark. 90, 598 S.W.2d 421. The trial court's refusal to give the instruction deprived the jury of the opportunity to weigh the evidence. Accordingly, the trial court erred in refusing to give the instruction. We thus reverse and remand for a new trial.

Additionally, in the event the State seeks to present Brown's confession as evidence in the new trial, we direct the trial court to hold another *Denno* hearing for the purpose of allowing all material witnesses to testify. The record reflects that Brown's interview took place at the Washington County Jail and was conducted by Fort Smith Detectives Clay Thomas and Rusty Walker. Although Walker conducted the bulk of the interview, he was not called to testify at the suppression hearing. This was error because it is the State's burden to present evidence from all material witnesses once the accused asserts that his custodial confession was involuntary.

■■ An accused's statement made while in custody is presumed involuntary, and the burden is on the State to prove by a preponderance of the evidence that it was given voluntarily and was knowingly and intelligently made. *Barcenas v. State*, 343 Ark. 181, 33 S.W.3d 136 (2000); *Smith v. State*, 334 Ark. 190, 974 S.W.2d 427

(1998). "[W]henever the accused offers testimony that his confession was induced by violence, threats, coercion, or offers of reward then the burden is upon the state to produce all material witnesses who were connected with the controverted confession or give adequate explanation for their absence." *Smith v. State*, 254 Ark. 538, 542, 494 S.W.2d 489, 491 (1973). *See also Foreman v. State*, 328 Ark. 583, 945 S.W.2d 926 (1997); *Griffin v. State*, 322 Ark. 206, 909 S.W.2d 625 (1995); *Remeta v. State*, 300 Ark. 92, 777 S.W.2d 833 (1989); *Williams v. State*, 278 Ark. 9, 642 S.W.2d 887 (1982); *Earl v. State*, 272 Ark. 5, 612 S.W.2d 98 (1981); *Bushong v. State*, 267 Ark. 113, 589 S.W.2d 559 (1979), *cert. denied*, 446 U.S. 938 (1980); *Gammel v. State*, 259 Ark. 96, 531 S.W.2d 474 (1976); *Russey v. State*, 257 Ark. 570, 519 S.W.2d 751 (1975); *Northern v. State*, 257 Ark. 549, 518 S.W.2d 482 (1975); *Smith v. State*, 256 Ark. 67, 505 S.W.2d 504 (1974). The State's burden to produce all material witnesses exists regardless of whether the defendant specifically raises the issue, in the trial court or on appeal. *See Smith*, 256 Ark. 67, 505 S.W.2d 504. As this court has explained:

> [W]e held in the earlier *Smith* case that, whenever the accused introduced evidence of coercion, the burden of the state could only be met by calling all material witnesses or giving adequate explanation for the absence of any who did not testify. *Nowhere in* Smith *does it appear that, in making an objection based upon a contention the state has failed to show a statement is involuntary, a defendant must point out, in precise words, that a material witness was not called.*

*Id.* at 70, 505 S.W.2d at 507-08 (emphasis added).

█ Here, Brown contended that he asked for an attorney during the interview and that his request was not honored. He also contended that the officers threatened him and made false promises of leniency to him. The transcript reflects that when Walker asked Brown to tell him what happened, Brown made the following statement: "I tell you (inaudible) talk to a lawyer (inaudible)." Walker's response was: "(Inaudible) they going to help (inaudible) what will that help in any way?" After a few more questions were asked, Brown stated: "Wait till I talk to a lawyer man." Because the State did not present Walker's testimony at the suppression hearing, Brown's testimony on this issue stands uncontradicted. Accordingly, should the State desire to use Brown's confession in the new trial, it must produce Walker at another suppression hearing so that the trial court may consider his testimony to determine whether Brown's confession was obtained in violation of his right to counsel. Likewise, Walker's testimony is required on Brown's claims that the

officers made false promises of leniency to him and that they threatened him during the course of the interview while the tape recorder was not running.

Reversed and remanded.

ARNOLD, C.J., GLAZE and HANNAH, JJ., concur in part and dissent in part.

TOM GLAZE, Justice, concurring in part; dissenting in part. I concur in the majority's decision to reverse for a limited remand for the trial court to conduct another suppression hearing. However, I disagree with the majority's holding that the trial court erred in refusing to give the lesser-included instruction on robbery. As the majority opinion states, aggravated robbery occurs if the person represents, *by word or conduct*, that he is armed with a deadly weapon.

Here, appellant Thornhill entered the Fort Smith convenience store demanding that the store clerk give him money. Thornhill wore a ski mask and brandished some type of gun to threaten the clerk into complying with Thornhill's demand. Obviously, Thornhill intended his use of the ski mask and gun to cause the clerk to understand that she should comply or Thornhill would use the weapon. Although she initially thought Thornhill's weapon looked strange, the victim (clerk) clearly perceived Thornhill's message that her life was being threatened if she did not hand over money.

In my view of the facts, Thornhill's conduct and words unequivocally conveyed that he was perpetrating an armed robbery. The majority opinion is wrong to suggest that the jury could reasonably have found no aggravated robbery occurred because the police later found only a BB gun in Thornhill's apartment. Such a suggestion fails to focus on what the victim perceived at the time of the crime. The trial court was clearly correct in concluding from Thornhill's conduct and words that he was in the store to commit armed or aggravated robbery. Thus, I would affirm the court's ruling on this point.

ARNOLD, C.J., and HANNAH, J., join this opinion.