SLIP OPINION

# SUPREME COURT OF ARKANSAS

No. CR-14-972

| | |
|---|---|
| SERANDON STARLING<br>APPELLANT | Opinion Delivered January 28, 2016 |
| V. | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46CR-13-240] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE JOE E. GRIFFIN, JUDGE |
| | AFFIRMED; MOTION TO WITHDRAW GRANTED. |

**HOWARD W. BRILL, Chief Justice**

Appellant Serandon Starling appeals from the sentencing order entered by the Miller County Circuit Court reflecting his convictions and sentences for first-degree murder and committing a terroristic act. Each offense was enhanced for employing a firearm, and Starling was sentenced as a habitual offender to a total term of life imprisonment plus fifteen years.[1] The attorney appointed to represent appellant on appeal has filed a motion to withdraw as counsel and a no-merit brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) and Arkansas Supreme Court Rule 4–3(k) (2015), asserting that the appeal is without merit. In accordance with Rule 4–3(k)(2), our clerk furnished appellant with a copy of the brief.

---

[1]Starling was sentenced to a term of life imprisonment for first-degree murder and a term of life imprisonment for terroristic act, to be served concurrently. Starling's firearm enhancements were to be served consecutively to his life sentences but concurrent to each other.

Appellant submitted two pro se points for reversal, and the State has responded. Because appellant received a sentence of life imprisonment, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(2) (2015). We find no reversible error and, therefore, affirm appellant's convictions and grant counsel's motion to withdraw.

## I. *Facts*

The following facts are adduced from the testimony and evidence presented at trial. On April 18, 2013, Demetrica Satterwhite contacted Frank Starling, appellant's brother ("Frank"), and told him that Billy "Wild Bill" Hawkins, was interested in buying some crack cocaine from him. According to Satterwhite, Wild Bill planned to sell the drugs to some men from Ashdown. Satterwhite drove Frank, Wild Bill, and Aundrey Battle to a local McDonald's, where she saw her cousin, Andrew "P.J." Cheatham. Satterwhite got out of her car and went over to P.J.'s car to talk to him; Wild Bill, who had possession of the drugs, followed her. Wild Bill then got in P.J.'s car, and the two of them drove off together.

Frank became angry when Wild Bill left with the drugs without paying for them and accused Satterwhite of setting him up to get robbed. According to Satterwhite, Frank forced her to drive Battle and him around town to look for P.J. and Wild Bill. During the pursuit of P.J. and Wild Bill, Satterwhite stopped at Frank's house and picked up Justin Benton. She then drove to Brittany Baker's house, where she saw a gold car parked outside, and picked up Khyia Primm and Quanissa Johnson. Satterwhite, Frank, and the others stopped for gas at a local convenience store, where Satterwhite said she saw the gold car again. Satterwhite went into the store and saw appellant, whom she did not know. Satterwhite testified that

2

SLIP OPINION

appellant identified himself as Serandon and that she later learned that he was in the gold car.

Satterwhite walked out of the store, and one of her passengers saw P.J. drive by, so Satterwhite and the driver of the gold car started following P.J.'s car. Satterwhite testified that the driver of the gold car blocked off P.J.'s car on a side street and that she pulled up behind P.J.'s car. Appellant got out of the gold car and went to P.J.'s car. Appellant shot at P.J.'s vehicle, and one of the bullets struck P.J. in the forehead, killing him.

## II. *Adverse Rulings*

### A. Directed Verdict—Credibility

Counsel contends that the circuit court did not err in denying appellant's motions for directed verdict. On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *E.g.*, *Anderson v. State*, 2011 Ark. 461, at 3, 385 S.W.3d 214, 217. This court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.*, 385 S.W.3d at 218. Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.*, 385 S.W.3d at 218. The evidence is viewed in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*, 385 S.W.3d at 218.

A person commits first-degree murder if "[w]ith a purpose of causing the death of another person, the person causes the death of another person." Ark. Code Ann. § 5-10-102(a)(2) (Repl. 2013). "A person commits a terroristic act if, while not in the commission of a lawful act, the person [s]hoots at or in any manner projects an object at a conveyance which is being operated or which is occupied by another person with the purpose to cause

SLIP OPINION

injury to another person or damage to property." Ark. Code Ann. § 5-13-310(a)(1) (Repl. 2013). "A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result." Ark. Code Ann. § 5-2-202(1) (Repl. 2013).

At trial, appellant moved for a directed verdict, contending that the State had presented no credible evidence to maintain the charges. Specifically, appellant argued,

> [W]e note the lack of credibility of witnesses due to their prior inconsistent statements and motives to lie based on their testimony here in court and the fact that they had charges pending or wanted to avoid having charges brought at all against them.

The State responded,

> I would ask the court to recall the testimony of the witnesses, specifically not only the law enforcement officers, but Demetrica Satterwhite, Phillip Blackwell, Shae Jones, and Justin Benton who were all present at the time this shooting occurred.
>
> Demetrica Satterwhite specifically testified that it was Serandon Starling who fired the gun that killed P.J. Phillip Blackwell specifically stated that it was Serandon Starling that fired the weapon. Shae Jones specifically stated that Serandon Starling had a weapon that he produced from his waistband when he got out of the car and she saw him with it again when he returned to the car. And Justin Benton stated that he saw Serandon Starling retrieve a gun from his Camero [sic] before getting into the car. He always carried a .45 and that he specifically recalled Serandon Starling shooting that .45 striking P.J.'s car.
>
> The bullet that was recovered from P.J.'s head was a .45 which can be directly linked back to the gun that Mr. Starling possessed and shot.
>
> Regarding their motive to testify, there are . . . no charges pending against Shae Jones nor has there been any indication to her by the State that any charges would be brought. Mr. Benton currently has charges pending and no agreements have been made by the State with Mr. Benton. Demetrica Satterwhite has charges pending and she specifically testified under oath that no promises have been made to her by the State in exchange for her testimony. No plea bargains have been made by the State, with the State in exchange for her testimony.

Variances and discrepancies in the proof go to the weight or credibility of the evidence and matters for the fact-finder to resolve. *Marts v. State*, 332 Ark. 628, 644, 968 S.W.2d 41, 49 (1998). The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *E.g.*, *Burley v. State*, 348 Ark. 422, 430, 73 S.W.3d 600, 605 (2002). Accordingly, when there is evidence of a defendant's guilt, even if it is conflicting, it is for the jury as fact-finder to resolve any conflicts and inconsistencies; it is not for the court to resolve on a directed-verdict motion. *Marts*, 332 Ark. at 644, 968 S.W.2d at 49; *see also State v. Long*, 311 Ark. 248, 251, 844 S.W.2d 302, 304 (1992) (stating that "when a trial court exceeds its duty to determine the sufficiency of the evidence by judging the credibility of the evidence, it commits an error that requires correction").

In his directed-verdict motions, appellant did not specify which witnesses gave inconsistent prior statements, which witnesses were motivated to lie because they had charges pending, or which witnesses wanted to avoid charges. Nevertheless, we conclude that, through the testimony and evidence presented at trial, the jury was apprised of the witnesses' involvement in the crime.

Moreover, the jury heard testimony regarding whether witnesses had pending charges. Satterwhite and Phillip Blackwell, who was a passenger in the gold car, testified that appellant shot at P.J.'s vehicle. Satterwhite testified that she was incarcerated in the Miller County Sheriff's Department with a charge pending for first-degree murder. She stated that she was testifying for the State but that the State had made her no promises and that she had not

received a plea deal for her testimony. Shae Jones, appellant's girlfriend, testified that she was with appellant at the time of the murder, that appellant had a weapon that he produced from his pocket when he got out of the car, and that she saw him with the gun when he returned to the car. Justin Benton testified that he saw appellant shoot at P.J. Benton also testified that he faced criminal charges for hindering apprehension in connection with the murder.

The jury has the sole authority to evaluate the credibility of evidence and to apportion the weight to be given to the evidence. *E.g.*, *Smoak v. State*, 2011 Ark. 529, at 6, 385 S.W.3d 257, 261. Viewing the evidence in the light most favorable to the verdict, we conclude that it was reasonable for the jury to infer from the circumstances that appellant committed the offenses of first-degree murder and terroristic act. We hold that the circuit court did not err in denying appellant's motions for directed verdict.

### B. Jury Instruction—Reckless Manslaughter

At trial, the circuit court instructed the jury on first-degree murder and the lesser-included offense of second-degree murder and refused appellant's request to instruct the jury on the lesser-included offense of reckless manslaughter. We have often stated that refusal to give an instruction on a lesser-included offense is reversible error if the instruction is supported by even the slightest evidence. *E.g.*, *Ellis v. State*, 345 Ark. 415, 418, 47 S.W.3d 259, 260 (2001). However, we will affirm a trial court's decision to exclude an instruction on a lesser-included offense if there is no rational basis for giving the instruction. *Id*. at 418, 47 S.W.3d at 260.

Counsel contends that the circuit court did not err in refusing to instruct the jury on

reckless manslaughter pursuant to Arkansas Code Annotated section 5-10-104(a)(3) (Repl. 2013), which states that a person commits manslaughter if the person recklessly causes the death of another person. A person acts recklessly with respect to the attendant circumstances or a result of his her conduct when the person consciously disregards a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur. Ark. Code Ann. § 5-2-202(3)(A) (Repl. 2013). The risk must be of a nature and degree that disregard of the risk constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation. *Id*. § 5-2-202(3)(B). In support of his request for the manslaughter instruction, appellant argued at trial that testimony demonstrated that he chased P.J. to "scare him" and that his intent was to "beat up" P.J., not to kill him. The State argued that, although there was testimony that some of the "girls in the car may have wanted [P.J.'s] ass whipped," there was no testimony whatsoever that appellant intended only to engage in a fistfight with P.J.

In this case, the jury was presented with evidence that appellant chased P.J., blocked P.J.'s vehicle with his vehicle, and ran up to P.J.'s car, shooting once into the hood of the car and a second time through the windshield of the car, killing P.J. We agree with counsel's contention that the circuit court did not err in refusing to instruct the jury on reckless manslaughter. Because there was no rational basis for giving an instruction for reckless manslaughter, we affirm the circuit court's ruling.[2]

---

[2]Counsel asserts that, because the circuit court instructed the jury on first-degree murder and second-degree murder, and appellant was convicted of first-degree murder, then any error committed by the circuit court in declining to instruct the jury on the lesser-

## C. Motion in Limine

Counsel contends that the circuit court did not err in overruling appellant's objection to the State's motion in limine. Before trial, the State filed a motion in limine to exclude evidence of P.J.'s past involvement in drug transactions and his reputation as a drug dealer. After hearing arguments from the parties, the circuit court granted the State's motion in limine with respect to

> the dates prior to the date in question or dates with other people even on the same date if they didn't involve these parties. But the circumstances surrounding the factual basis, the facts concerning how this thing came about, or this case came about, would certainly be part of this case. But prior days or prior events with separate parties that are not otherwise involved in this case would be irrelevant.

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ark. R. Evid. 401 (2015). Evidence which is not relevant is not admissible. Ark. R. Evid. 402. The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse that decision absent a manifest abuse of discretion or absent a showing of prejudice. *Bruner v. State*, 2013 Ark. 68, at 11, 426 S.W.3d 386, 393.

Here, the circuit court allowed extensive testimony about the drug deal between Wild

---

included offense of reckless manslaughter is cured by the skip rule. *See Easter v. State*, 306 Ark. 615, 620, 816 S.W.2d 602, 605 (1991) ("When a lesser included offense has been the subject of an instruction, and the jury convicts of the greater offense, error resulting from failure to give an instruction on another still lesser included offense is cured."). Because we hold that the circuit court did not err in refusing to instruct the jury on reckless manslaughter, we need not engage in a skip-rule analysis. Here, there is no error to cure.

Bill and Frank. The jury was made aware of the facts and circumstances leading up to P.J.'s death. Specifically, the jury learned that P.J.'s death resulted from a drug deal gone bad between Frank and Wild Bill. We hold that the circuit court did not abuse its discretion in excluding evidence about P.J.'s past involvement in drug transactions and his reputation as a drug dealer.

## D. Other Adverse Rulings

Counsel has addressed the remaining adverse rulings.[3] Having reviewed the record and briefs, we agree with counsel that none of the rulings present a meritorious ground for reversal.

## III. *Pro Se Points*

## A. Directed Verdict—Intent

Appellant contends that the circuit court erred in denying his motion for directed verdict on the charge of first-degree murder because the State failed to establish that he possessed the intent to purposely cause the death of another. The State contends that appellant's pro se sufficiency challenge is barred because appellant has changed the nature of

---

[3]Over defense counsel's hearsay objections, the circuit court allowed Satterwhite's testimony about her conversations with Wild Bill and Frank. Because this testimony was not offered for the truth of the matter asserted, the circuit court did not err in overruling the objections.

We agree with counsel's assertion that we do not consider appellant's pro se posttrial motions because they are not preserved or our review. Appellant filed the pro se motions after the notice of appeal had been filed, and the circuit court did not rule on the motions. Even assuming the pro se motions were deemed denied by operation of law, *see* Ark. R. App. P.–Crim. 2(b)(1), appellant did not file an amended notice of appeal to appeal the denial of those motions, *see* Ark. R. App. P.–Crim. 2(b)(2).

his sufficiency argument on appeal. We agree. At trial, appellant argued that there was no credible evidence presented in the State's case for the charges to be maintained. On appeal, however, appellant contends that the State failed to prove that he intended to purposely cause the death of P.J. A party is not permitted to change the scope and nature of a directed-verdict motion on appeal. *See Lamb v. State*, 372 Ark. 277, 279, 275 S.W.3d 144, 146 (2008).

## B. Jury Instruction—Extreme-Emotional-Disturbance Manslaughter

Appellant contends that the circuit court erred in refusing to instruct the jury on extreme-emotional-disturbance manslaughter. At trial, appellant requested jury instructions for the lesser-included offenses of second-degree murder and reckless manslaughter. Appellant did not, however, request an instruction for extreme-emotional-disturbance manslaughter.[4] Consequently, we do not address appellant's contention on appeal. *See, e.g.*, *White v. State*, 370 Ark. 284, 294, 259 S.W.3d 410, 417 (2001) (stating that appellant's failure to request a jury instruction at trial precludes our review because we do not address issues raised for the first time on appeal).

## IV. *Rule 4-3(i)*

Pursuant to Arkansas Supreme Court Rule 4-3(i), the record has been reviewed for all objections, motions, and requests that were decided adversely to appellant, and no

---

[4]A person commits manslaughter if the person causes the death of another person under circumstances that would be murder, except that he or she causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse. Ark. Code Ann. § 5-10-104(a)(1)(A). The reasonableness of the excuse is determined from the viewpoint of a person in the actor's situation under the circumstances as the actor believed them to be. *Id.* § 5-10-104(a)(1)(B).

prejudicial error has been found.

Affirmed; motion to withdraw granted.

BAKER and HART, JJ., dissent.

**JOSEPHINE LINKER HART, Justice, dissenting.** I respectfully dissent because the majority has not complied with the dictates of *Anders v. California*, 386 U.S. 738 (1967), and its progeny. As this court recently explained, filing an *Anders* brief is permissible only when an attorney has provided the client with a diligent and thorough search of the record for any arguable claim that might support the client's appeal, and after having identified all of the potential adverse rulings, the attorney determines that an appeal from those rulings would be "frivolous." *Her v. State*, 2015 Ark. 914, 57 S.W.3d 659 (citing *Penson v. Ohio*, 488 U.S. 75 (1988)). In an *Anders* case, the standard is not whether the appellant has a an argument that will result in a reversal of his or her conviction; it is whether it would be wholly frivolous—essentially unethical—to argue a particular point. It has been my experience on this court and on the court of appeals that more than ninety percent of all criminal appeals are affirmed. At the same time, I am not aware of a single instance in which an attorney has been sanctioned or even referred to the Arkansas Committee on Professional Conduct for making an unsuccessful appellate argument, even when the issue was not preserved for review.

In my view, it would not be frivolous to challenge the circuit court's refusal to give a manslaughter instruction. A party is entitled to a jury instruction if there is *any* supporting evidence for the instruction. *Morris v. State*, 351 Ark. 426, 94 S.W.3d 913 (2003) (citing *Henderson v. State*, 349 Ark. 701, 80 S.W.3d 374 (2002)). The standard of "any supporting

evidence" is perhaps the lowest showing required in the law; it is reversible error to refuse to give an instruction on a lesser-included offense when the instruction is supported by even the slightest evidence. *See Brown v. State*, 347 Ark. 44, 60 S.W.3d 422 (2001); *Ellis v. State*, 345 Ark. 415, 47 S.W.3d 259 (2001); *Harshaw v. State*, 344 Ark. 129, 39 S.W.3d 753 (2001). This court has said no right has been more zealously protected by this court than the right of an accused to have the jury instructed on lesser-included offenses. *Brown v. State*, *supra*; *Rainey v. State*, 310 Ark. 419, 837 S.W.2d 453 (1992); *Robinson v. State*, 269 Ark. 90, 598 S.W.2d 421 (1980). It is proper to affirm the trial court's decision to exclude an instruction on a lesser-included offense only if there is no rational basis for giving the instruction. *Brown*, *supra*.

The majority correctly notes that reckless manslaughter involves conduct whereby "a person consciously disregards a substantial risk" that his conduct will result in the death of a person. Yet, it discounts the testimony that appellant fired his gun at the victim's car, without specifically targeting the victim—one shot was aimed at the hood of the car, the other shot, which killed the victim, was aimed at the windshield. Further, as the majority notes, there was testimony that appellant intended to merely to scare the victim, not kill him. Thus, an argument on appeal that the circuit court erred by refusing to give a reckless-manslaughter instruction would not be frivolous.

I am mindful that the so-called "skip rule" could potentially have been invoked to dispose of this particular issue. In my research, I found the skip rule used in our cases at least fifteen times, but never in the *Anders* context. Indeed, decisions relying on the skip rule have engendered a dissent and two concurrences, which indicates that this issue is not so well

settled as to make an appellate argument about the entitlement to a reckless-manslaughter instruction wholly frivolous.

Likewise, the circuit court's refusal to give an extreme-disturbance-manslaughter instruction would not be frivolous. For a jury to be instructed on extreme-disturbance manslaughter, there must be evidence that the defendant killed the victim in the moment following some kind of provocation, such as physical fighting, a threat, or brandishing a weapon. *Boyle v. State*, 363 Ark. 356, 362, 214 S.W.3d 250, 253 (2005). I cannot ignore that there was testimony that the victim had a gun in his hand when he was found dead. The essence of brandishing a weapon is holding it in one's hand. I am not aware of how a person would be able to take hold of a weapon post mortem.

The majority's contention that this issue, which came before the court as a pro se point, need not be addressed, fails to comport with the *Anders* blueprint. Pro se parties who are facing the withdrawal of their appellate counsel under *Anders* must only raise issues requiring the attention of counsel. Ark. S. Ct. R. 4–3(k)(2). They need not be fully developed appellate arguments—the pro se party already has appellate counsel. As for the majority's contention that the argument was not made below, preservation of this issue was at least as solid as the reckless-manslaughter issue. It is disingenuous to suggest otherwise.

I would deny counsel's motion to withdraw and order rebriefing in merit form.

BAKER, J., joins.

*Phillip A. McGough, P.A.*, by: *Phillip A. McGough*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Ass't Att'y Gen., for appellee.