Cite as 2026 Ark. App. 207

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CR-25-84

| | |
|---|---|
| HEATHER SCALLION<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered April 1, 2026<br><br>APPEAL FROM THE BOONE COUNTY CIRCUIT COURT [NO. 05CR-21-316]<br><br>HONORABLE JOHN R. PUTMAN, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Heather Scallion was convicted by a Boone County jury of first-degree murder, aggravated robbery, theft of property, and theft by receiving involving a firearm. She appeals her convictions, challenging the sufficiency of the evidence on all four. She also challenges the imposition of the sentencing enhancements. Because there was sufficient evidence to support her convictions and because she failed to timely challenge the sentencing enhancements, we affirm.

I. *Facts and Procedural History*

On October 14, 2021, Jason Stockstill shot and killed Timothy Blackburn with a stolen .22-caliber rifle. At the time of the shooting, Stockstill was hiding in a barn on the property of Blackburn's mother, Audie Blackburn. After shooting Blackburn, Stockstill stole Blackburn's pistol and fled in Blackburn's pickup truck. He later ditched the truck, fled on

foot, and hid from the police for approximately one week before being captured. Stockstill's girlfriend, Heather Scallion, was with him when he was captured.

During the investigation of Blackburn's murder, it was revealed that Stockstill and Scallion were present on Audie's property the day before the murder. The two spoke with Audie and told her they were looking for Blackburn. Audie informed them that Blackburn did not live there and that she did not know when he would return. At the time, Stockstill was carrying the .22-caliber rifle he later used in the murder. A shotgun, which had also been stolen, had been left by the fence bordering Audie's property.

The next day, Blackburn visited his mother and proceeded to fix a break in her fence. Audie watched him enter the barn when he was done. A short time later, Audie saw Stockstill—and a woman matching Scallion's description—exit the barn, get into Blackburn's truck, and leave. When Audie went to the barn to check on Blackburn, she discovered his body and called 911.

A few hours later, Scallion was seen leaving a convenience store in Blackburn's truck. Stockstill and Scallion later abandoned the truck and fled on foot. While on the run, they broke into and slept in a bus and a camper, stole food and firearms, and were able to escape capture for several days. Scallion remained with Stockstill during his attempt to evade capture and was with him when he was arrested. At the time of her arrest, Scallion was in possession of a stolen weapon. Her backpack, identification, and credit cards were found in Blackburn's abandoned truck. At the time of her arrest, Scallion was wearing clothing that

matched Audie's description of the clothing worn by the woman she saw with Stockstill the morning Blackburn was killed.

Stockstill maintained that Scallion was with him at the time of Blackburn's murder. He claimed that they had walked to Audie's property the day before the murder. He was carrying the .22-caliber rifle at the time; Scallion was carrying a shotgun.[1] He further maintained that he and Scallion never left the property the day they spoke with Audie and that they had slept in her barn that night. According to Stockstill, he shot and killed Blackburn when Blackburn entered the barn the next morning and after Scallion insisted that he "do something" so they would not be discovered. Stockstill maintained that Scallion was afraid that Blackburn was either going to shoot them or call law enforcement. As they were leaving, Scallion told him that Blackburn was still breathing, yet they stepped over Blackburn's body and continued on. She also asked Stockstill what they were going to do about Audie, and he responded that he was not going to hurt an old lady. They then left in Blackburn's truck.

Scallion admitted that she was with Stockstill the day before the murder and that they visited Audie's property. However, she denied Stockstill's claim that she carried the stolen shotgun and his claim that they spent the night in Audie's barn. Instead, she asserted that after their interaction with Audie, they returned to Stockstill's house. She claimed that they stayed at his house overnight but that Stockstill was not there when she awoke. When

---

[1]He claimed he took the gun away from Scallion because she was not carrying it safely, and they left it by the fence before going onto Audie's property.

Stockstill returned, he was in a hurry to leave. They walked to his sister's house and got into a dark blue truck parked nearby. She denied knowing about or being involved in Blackburn's murder or that the truck had been stolen. She claimed she eventually realized they were evading the police but believed that they were hiding because Stockstill had failed to appear in court on other charges.

Scallion was subsequently arrested and ultimately charged as an accomplice with first-degree murder, aggravated robbery, theft of property, and theft by receiving involving a firearm. The State also sought a sentencing enhancement alleging that she employed a firearm in the commission of, or escape from, a felony. She was tried by a jury over five days in September and October 2024. After hearing all the evidence, the jury convicted Scallion on all charges.

## II. *Arguments on Appeal*

On appeal, Scallion challenges the sufficiency of the evidence to support each of her convictions. When the sufficiency of the evidence is challenged on appeal from a criminal conviction, we consider only that proof that supports the conviction and view that evidence and all reasonable inferences deducible therefrom in the light most favorable to the State. *Davis v. State*, 2015 Ark. App. 234, 459 S.W.3d 821. We will affirm if the finding of guilt is supported by substantial evidence. *Id.* Substantial evidence is evidence of sufficient force and character to compel a conclusion one way or the other without resorting to speculation or conjecture. *Hicks v. State*, 2012 Ark. App. 667.

### A. Accomplice Liability—First-Degree Murder/Aggravated Robbery

4

Scallion first argues that there was insufficient evidence to support her first-degree-murder and aggravated-robbery convictions. More specifically, she challenges the sufficiency of the evidence establishing her participation as an accomplice in Stockstill's decision to shoot Blackburn in the back of his head, thereby causing his death, and in stealing his truck. She claims that the only evidence presented at trial that she encouraged Stockstill to murder Blackburn was Stockstill's testimony that she had urged him to "do something" before the shooting. As such, the State failed to provide sufficient evidence to corroborate Stockstill's testimony linking her to Blackburn's murder.

Scallion's argument as to corroboration, however, is not properly preserved for our review. In order to preserve an accomplice-corroboration challenge to the sufficiency of the evidence for appellate review, a defendant must either have the trial court declare a witness to be an accomplice as a matter of law or submit the issue to the jury for determination. *E.g.*, *Flowers v. State*, 92 Ark. App. 29, 210 S.W.3d 907 (2005). While the jury was informed that the State was proceeding under the theory that Scallion had not acted alone and it was given an instruction defining an "accomplice," Scallion never asked, and the court never declared, Stockstill to be an accomplice as a matter of law; nor did she request that the jury decide the issue. There are two model jury instructions that would have been relevant here, neither of which was given. Arkansas Model Jury Instruction–Criminal 2d 402 is used when accomplice status is undisputed. Arkansas Model Jury Instruction–Criminal 2d 403 is given when accomplice status is in dispute. Both jury instructions advise the jury that in order for a person to be convicted of a crime as an accomplice, corroboration of the accomplice's

testimony is required. Scallion did not request that either be given. Because Scallion failed to have Stockstill declared an accomplice as a matter of law or to have the jury instructed on the issue, her claim is barred.

Even if it had been preserved, the evidence to corroborate Stockstill's testimony would still be sufficient, thereby connecting Scallion to the commission of the offense. It is well settled that a conviction may not be had in a felony case upon the testimony of an accomplice unless such testimony is corroborated by other evidence tending to connect the defendant with the commission of the offense. *See* Ark. Code Ann. § 16-89-111(e)(1)(A) (Supp. 2023). The corroboration is insufficient if it merely shows that the offense was committed and the circumstances of the offense. Ark. Code Ann. § 16-89-111(e)(1)(B). Corroboration must be evidence of a substantive nature, since it must be directed toward proving the connection of the accused with the crime, and not directed toward corroborating the accomplice's testimony. *MacKool v. State*, 365 Ark. 416, 430, 231 S.W.3d 676, 688 (2006). Circumstantial evidence may be used to support accomplice testimony, but it, too, must be substantial. *Id.* Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. *Id.* Rather, it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime. *Id.* Moreover, the acts, conduct, and declarations of the accused, before or after the crime, may furnish necessary corroboration. *Bradley v. State*, 2013 Ark. 58, 426 S.W.3d 363; *Strong v. State*, 372 Ark. 404, 277 S.W.3d 159 (2008). Further, flight following the commission of an offense is a factor that may be considered with other evidence in

6

determining probable guilt and may be considered as corroboration of evidence tending to establish guilt. *Id.*

Here, there was sufficient corroborating evidence submitted. Audie Blackburn testified that she saw Scallion with Stockstill the day before the murder. Scallion even admitted that she was with Stockstill at the Blackburn farm that day. The next day, Stockstill shot Blackburn. While Stockstill placed Scallion with him in the Blackburn barn at the time of the shooting; Scallion denied being there. However, shortly after Blackburn was shot, Audie saw Stockstill and a female leave the barn and drive off in Blackburn's truck. When questioned by officers, Audie identified Stockstill and described the female as a blonde with her hair in a bun and wearing a camouflage hoodie. Approximately an hour and a half after the murder, Scallion purchased food at a convenience store with a $100 bill. Surveillance video from the convenience store showed Scallion arriving and leaving the store in Blackburn's truck. She was wearing a camouflage jacket with her hair in a bun at the time.

Scallion and Stockstill then evaded police for approximately a week. At one point, they abandoned Blackburn's truck after being seen by police. They later broke into a bus and a camper for shelter and stole food and guns. Scallion's backpack, including her driver's license and credit cards, was found in Blackburn's truck after they abandoned it. Officers also collected Blackburn's pistol and a "wad" of cash—approximately $430—when they arrested the two. Witnesses testified that Blackburn normally carried a money clip with several hundred dollars cash. That money clip was never located. The jury was free to infer that the cash found during the arrest and used at the convenience store were taken from

7

Blackburn along with his truck and his pistol. At the time of her arrest, Scallion had her blonde hair in a bun and was wearing camouflage. These facts, when taken together, are sufficient to corroborate her role in the commission of the crime. As such, there was sufficient evidence to support accomplice liability for her first-degree murder and aggravated-robbery convictions.

## B. Theft of Property

Scallion next argues that her theft-of-property and aggravated-robbery convictions were based on the same conduct and that the theft conviction is a lesser-included offense. Despite being couched as an argument regarding the sufficiency of the evidence, it is more akin to a double-jeopardy argument, which she did not assert below. As a result, it is not preserved for our review. *See Goodrum v. State*, 2025 Ark. 41, at 3 ("It is our longstanding rule that we will not consider arguments, even constitutional arguments, raised for the first time on appeal.").

In any event, our courts have consistently held that theft of property, whether by threat or otherwise, is not a lesser-included offense of aggravated robbery. *See Brown v. State*, 347 Ark. 44, 60 S.W.3d 422 (2001); 425 *Robinson v. State*, 303 Ark. 351, 797 S.W.2d 425 (1990); *Rolark v. State*, 299 Ark. 299, 772 S.W.2d 588 (1989); *Cartwright v. State*, 2016 Ark. App. 425, 5, 501 S.W.3d 849. Thus, her argument lacks merit.

## C. Theft by Receiving Involving a Firearm

Next, Scallion argues that there was no evidence that she knew or should have known that the shotgun given to her by Stockstill was stolen.[2] As such, the evidence was insufficient to support her theft-by-receiving conviction.

A person commits the offense of theft by receiving involving a firearm if he or she receives, retains, or disposes of stolen property of another person, knowing that the property was stolen, or having good reason to believe the property was stolen.[3] Ark. Code Ann. § 5-36-106(a) (Repl. 2013). The unexplained possession or control of recently stolen property or the acquisition of property for a consideration known to be far below the property's reasonable value both give rise to a presumption that a person knows or believes that the property was stolen. Ark. Code Ann. § 5-36-106(c).

Here, Gary Harness testified that he usually carried his .22-caliber rifle and his shotgun in a gun rack on his side-by-side for predator control on his property. A few weeks before Blackburn's murder, he discovered they were missing. He did not immediately file a police report because he believed from past experience that it would be a waste of time. However, when Harness heard about the murders, he contacted the police. He testified that Stockstill used to buy lumber from him and would sometimes come to his property when he was not there. In fact, the rifle Stockstill used to kill Blackburn was determined to be the .22-

---

[2]The evidence also showed that she possessed one of the rifles they stole while they were evading the authorities. Those weapons, however, were stolen and possessed in Stone County, not Boone County where these charges were tried. Thus, they are not at issue here.

[3]The crime is classified as a Class D felony if the theft is of a firearm valued at less than $2,500. Ark. Code Ann. § 5-36-106(e)(3)(B)(iii).

9

caliber rifle stolen from Harness. His stolen shotgun was found abandoned in the grass next to the fence between the Blackburn and Stockstill properties. Stockstill testified that Scallion had been carrying the shotgun the day before the murder but that he took it from her because she was not being firearm safe. Scallion did not deny carrying the weapon that day. Finally, Scallion was in a romantic relationship with Stockstill and knew he was a convicted felon and could not legally purchase or possess a firearm. Their unexplained possession and control of recently stolen property give rise to a presumption that they knew the property was stolen. While Scallion argued that she did not know the guns were stolen, the jury was not required to believe her. Given the presumption and the other evidence presented, there was sufficient evidence to support her theft-by-receiving conviction.

## D. Firearm Enhancement

Finally, Scallion argues that, because there is no evidence that she personally employed a firearm in the commission of any of the crimes, the imposition of firearm enhancements on her convictions constituted an illegal sentence.[4] Scallion's argument, however, is not preserved for appeal because it was not timely raised below. She did not make this argument at trial nor did she object to the jury being instructed on the firearm enhancement. Instead, she raised this argument for the first time in a motion for new trial. This came too late.

---

[4]A firearm enhancement was imposed on each of Scallion's four convictions. She received a two-year sentencing enhancement on her aggravated-robbery conviction and one year each on the other three convictions.

An issue must be presented to the trial court at the earliest opportunity in order to preserve it for appeal. *Fuller v. State*, 316 Ark. 341, 872 S.W.2d 54 (1994). Even a constitutional issue must be raised at trial in order to preserve the issue for appeal. *Id.* An objection made for the first time in a motion for new trial is untimely, *Donovan v. State*, 95 Ark. App. 378, 237 S.W.3d 484 (2006), and a motion for new trial cannot be used as an avenue to raise new allegations of error that have not been raised and preserved at trial. *Wooten v. State*, 2016 Ark. 376, 502 S.W.3d 503.

In the present case Scallion failed to lodge any objection to the firearm enhancements until her posttrial motion. For example, in the guilt phase, Scallion did not object when the jury was provided an instruction explaining that the State was alleging that Scallion employed a firearm as a means of committing or escaping from the commission of a felony and that the jury must make that finding beyond a reasonable doubt. In addition, the jury was given an interrogatory asking it to make that finding on the verdict form for each felony charge. Again, Scallion did not object to the verdict forms nor did she object to related instructions being provided in the sentencing phase of the trial. In short, an objection to the firearm enhancements should have been raised during the trial and could not be revived by a subsequent new-trial motion.

For the foregoing reasons, we find that there was sufficient evidence to support her convictions and the firearm enhancements and affirm.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.